[No. 7550. Decided March 9, 1909.]

A. SIMONS, *Respondent*, v. CHARLES CISSNA *et al.*, *Appellants.*[1]

APPEAL—REVIEW—DISCRETION—RULINGS ON PLEADINGS. Motions to strike and make a pleading more definite and certain are addressed largely to the discretion of the trial judge, whose rulings will not be reversed where no prejudice resulted.

FRAUD—DECEIT AS TO CREDIT—COMPLAINT—SUFFICIENCY. A complaint for deceit as to the solvency of a corporation is sufficient where it alleges false representations relating to existing material facts, defendants' knowledge of their falsity and intent to deceive, and plaintiff's ignorance and reliance thereon to his damage.

SAME—OPINIONS. A false representation as to the solvency of a corporation is not necessarily matter of opinion, and is actionable where the defendant was familiar with its affairs down to the smallest detail.

SAME—RELIANCE ON REPRESENTATIONS—DUTY TO INVESTIGATE. One is not negligent in failing to investigate representations as to the solvency of a corporation, if they were made under circumstances to justify belief by a reasonably prudent man.

SAME—SOLVENCY—EVIDENCE—SUFFICIENCY. There is sufficient evidence to sustain a verdict for false representations as to the credit of a corporation, where it was represented to be solvent, good for one hundred cents on the dollar, and owning a mill and timber lands with $20,000 back of it, where in fact but $5,000 of its capital was paid in, and had been used as a first payment on a contract to purchase its mill and timber lands for $18,000, subject to forfeiture if $500 was not paid each month, its stockholders were insolvent, and it had no other assets.

[1]Reported in 100 Pac. 200.

BANKS AND BANKING—LIABILITY FOR FRAUD OF OFFICERS. A bank is not liable for false representations as to the credit of a corporation, made by one of its officers, on plaintiff's unsupported allegation that the representations were made by the officer in his official capacity for the bank, it appearing that plaintiff was referred to, and that he went to, and the representations were made by, the officer, and not the bank.

FRAUD—DECEIT AS TO CREDIT—MEASURE OF DAMAGES—INSTRUCTIONS. In an action for damages for false representations as to the solvency of a corporation, whereby plaintiff agreed to log its lands for from $4.00 to $4.50 a thousand, and incurred expense in building skid roads, moving donkey engines, and delivering logs, which was lost by the insolvency of the corporation, instructions on the measure of damages allowing recovery for the sum plaintiff had earned under the contract and for the expense incident to the work are erroneous, as they give double damages, regardless of whether profits could be recovered at all.

FRAUD—DECEIT AS TO CREDIT—TEST OF SOLVENCY. False representations that a corporation was wholly solvent and would pay one hundred cents on the dollar, inducing plaintiff to enter into a logging contract of considerable magnitude, go far beyond the test of solvency prescribed by the National Bankruptcy Act; and the proper test of solvency is that it be of the character which permits the discharge of its debts as they fall due in the ordinary course of business.

SAME—INSTRUCTIONS. In an action for deceit as to the credit of a corporation at a certain time, insolvency at a subsequent time is immaterial where the insolvency at the time in question was fully shown; and instructions thereon should not be given.

SAME—SUBSEQUENT TRANSACTIONS. In an action for deceit as to the credit of a corporation at a certain time, what transpired thereafter affecting the question of solvency is material only as it tends to show the extent of the damage.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered January 14, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for fraud. Reversed.

*Dorr & Hadley* and *Hardin & Hurlbut*, for appellants.

*H. M. White* and *Pemberton & Sather*, for respondent.

RUDKIN, C. J.—On the 15th day of May, 1905, the defendant The Home Security Savings Bank was the owner

of certain mill property and timber lands in Whatcom county. At or about that time, a corporation known as the American Mill & Timber Company was organized with a capitalization of $20,000 for the purpose of taking over this property. Only $5,000 had then been paid in on the capital stock of the purchasing company, and no payments on account of stock subscriptions have since been made. On the above date the defendant bank entered into an agreement to sell the mill property and timber lands to the American Mill & Timber Company, in consideration of the sum of $18,000, $5,000 of which was paid at the execution of the contract, the balance of $13,000 to be paid in monthly installments of $500 per month. The contract contained numerous stipulations and conditions, including provisions that the contract was to be a mere option to purchase, that no right, title, or interest in the property should vest in the purchaser until the full payment of the purchase price, and that the contract should be forfeited, at the option of the vendor, for failure on the part of the purchaser to operate the mill for a period of thirty days, or to make payments when due, or to comply with other provisions of the contract. The $5,000 paid by the purchasing company was the $5,000 paid in on its capital stock.

On the 30th day of June, 1905, the plaintiff contemplated entering into a logging contract with the American Mill & Timber Company to log off the lands described in its contract of purchase. The plaintiff was not acquainted with the officers of the company and knew nothing of its financial affairs or standing. He therefore asked the president of the American Mill & Timber Company for a reference as to the company's standing and its ability to carry out its contract. The plaintiff was referred to the defendant Cissna, and informed him that he was about to enter into a logging contract with the American Mill & Timber Company and had been referred to him to ascertain how the company stood financially. Cissna informed the plaintiff that the company

was good financially, that it was wholly solvent and would pay one hundred cents on the dollar, that it had the timber land and mill property and $20,000 back of it. Relying on these representations, the plaintiff entered into a contract with the American Mill & Timber Company, by which he agreed to haul and deliver fir logs at the rate of $4 per thousand and cedar logs at the rate of $4.50 per thousand. Under this agreement the plaintiff expended large sums of money in building and repairing skid roads, in moving donkey engines, and in hauling and delivering logs to the mill. On or about November 1, 1905, the American Mill & Timber Company discontinued business and became insolvent, and the plaintiff has been unable to collect for his services. This action was instituted against the defendants to recover damages for the false and fraudulent representations as to the solvency of the American Mill & Timber Company, and from a judgment in favor of the plaintiff and against both defendants, this appeal is prosecuted.

A series of motions was interposed against the complaint, to strike certain portions, and to make other portions more definite and certain. These several motions were in a large part denied, and the rulings of the court are assigned as error. Motions of this kind are addressed to the sound discretion of the trial court, and we see nothing in the complaint or in the subsequent proceedings at the trial to indicate that this discretion was abused, or that the appellants were injured or prejudiced in the slightest degree by any of the rulings complained of. Error is assigned in the overruling of a demurrer to the complaint, in the denial of a motion for nonsuit at the close of the respondent's case, and in the denial of a motion for a directed verdict or judgment at the close of all the testimony. These several rulings involve the same general question and may be considered together. It seems to us that the complaint contains all the essential elements of a cause of action. It sets forth the representations made; that they related to existing material

facts; that they were false; that the appellants knew of their falsity and intended thereby to deceive and defraud the respondent; that the respondent was ignorant of the falsity of the representations made, and believed them to be true, and that the respondent acted upon them to his damage. *Tacoma v. Tacoma Light & Water Co.*, 17 Wash. 458, 50 Pac. 55; 20 Cyc. 90.

The contention that representations as to solvency relate to mere matters of opinion and are not actionable is untenable.

"A representation as to a third person's solvency and credit must be an assertion implying knowledge, not a mere expression of opinion, although an intentionally false opinion may be actionable. But the question whether a representation as to a third person's financial ability is a statement of fact or an expression of opinion is recognized as being one of peculiar difficulty, and as its solution depends upon the circumstances as well as upon the nature of the statement and the meaning of the language used, it is in the first instance to be determined by the jury. In the earlier cases the courts construed as mere expressions of opinion statements which the court now would doubtless regard as representations of fact." 20 Cyc. 75.

This is especially true of this case where the appellant Cissna was familiar with the affairs of the American Mill & Timber Company down to the smallest detail.

The further contention that the respondent was guilty of negligence in relying upon the representations made, and that he should have ascertained the financial condition of the American Mill & Timber Company from other sources or upon independent investigation, is equally unsound.

"The rule imposing upon a purchaser the duty to investigate as to the truth of his vendor's statements concerning the property to be sold has no application to representations made by a third person as to the credit, solvency, etc., of another. In cases of this character the position of the parties is not antagonistic but somewhat confidential. Therefore if defendant's representation was of such a character,

and was made under such circumstances as to justify its belief by a reasonably prudent man, plaintiff being ignorant of the truth and acting upon the representation to his injury, a recovery may be had, although plaintiff might, by the exercise of diligence, have ascertained the insolvency of the person recommended; and defendant will not be heard to say that he is a person on whose word plaintiff had no right to rely." 20 Cyc. 77.

We are also of the opinion that the testimony was sufficient to sustain the verdict and judgment as against the appellant Cissna. It tended to sustain every material allegation of the complaint. The sufficiency of the proof on the question of insolvency is challenged, but the testimony showed the financial standing of the American Mill & Timber Company to be far different from what it was represented. At the time the representations were made the company's assets consisted of the optional agreement to purchase the mill property and timber lands, under which only $5,000 of the total purchase price of $18,000 had been paid. The agreement was subject to forfeiture unless the mill was operated and $500 per month paid on the purchase price. The stockholders were insolvent and could make no further payments on their stock subscriptions. Such a corporation is not necessarily solvent, is not good for one hundred cents on the dollar, and has not a mill and timber lands and $20,000 at its back.

As to the appellant bank, the motion for a nonsuit and for a directed verdict or judgment should have been granted. The respondent was referred to the appellant Cissna and not the bank; he went to the appellant Cissna and not to the bank, and the representations were made by the appellant Cissna and not by the bank. The only attempt the respondent makes to sustain his judgment against the bank is by a reference to the amended complaint, which alleged that at all the times therein mentioned the appellant Cissna was acting for the bank in his official capacity, coupled with the statement that this allegation was not denied. In this

the respondent is in error. The allegation in question was denied in each of the answers, and no attempt was made to sustain it by proof. To uphold the judgment against the bank on such a record would be an unheard of application of the doctrine of *respondeat superior*.

The appellants assign error in the giving of ·the following instruction on the measure of damages:

"I called you back, gentlemen of the jury, for the purpose of emphasizing, or, rather, for the purpose of repeating and possibly correcting an instruction I gave you with reference to the measure of damages. If you find for the plaintiff you will find for such an amount or sum as was earned under the contract by the plaintiff for the logs which he delivered, which were taken off the land which was purchased from the Home Security Savings Bank. Also for such amount as was reasonably expended in the construction and erection of skid roads upon the land, and also for the necessary moving of the donkey engines; all these amounts will be based upon testimony which was offered and admitted."

In support of this assignment the appellants contend that the measure of damages in this class of actions is the actual loss sustained by the plaintiff, which would of necessity exclude any claim for profits. The respondent contends that the instruction complained of is in harmony with that rule, inasmuch as the contract price for hauling and delivering logs was presumptively the reasonable value of the services performed in that connection. Whatever may be said of this latter contention as one of general application, it cannot prevail in this case, for obvious reasons. The $4 and $4.50 per thousand for hauling and delivering logs included all incidental expenses, such as building and repairing skid roads, moving donkey engines, etc. Had the respondent fully performed his contract and received payment for all logs delivered at the contract rate, he would likewise have received payment for building and repairing skid roads, moving donkey engines, and all other expenses incident to

his contract; and, when the court below allowed him the expense of building and repairing skid roads and moving donkey engines, and the full contract price for hauling and delivering logs, it allowed him double damages. We are not unmindful of the fact that two different rules of damages are sanctioned by the authorities in this class of actions. Under one rule the party guilty of the fraud is chargeable with such damages as naturally and proximately result therefrom. He must make good his representations as though he had given a warranty to that effect. He must make compensation for the difference between the real state of the case and what it was represented to be. Under the other rule damages are limited to the actual loss sustained by the party, such as money paid out with interest, and other outlays resulting from the wrong. Sutherland, Damages, §§ 1171-1172; 20 Cyc. 130-135. We do not deem it necessary to discuss these different rules or determine which is preferable, as the case was heard in the court below on the latter theory, and the correctness of its ruling is not before us. But the instruction complained of is incorrect under either rule, and calls for a reversal of the judgment.

The court charged the jury, in effect, that the true test of solvency is the ability to pay one's debts as they fall due in the ordinary course of business. The appellants contend that the true test is the one prescribed by the National Bankruptcy Act; namely, a person is solvent when his assets are equal to or in excess of his liabilities. In determining the question of solvency or insolvency we are not prepared to say that the same criterion should apply in every case. The tramp who walks the streets, without a cent and without a debt, without a home and without a care, is perfectly solvent, within the purview of the National Bankruptcy Act, but manifestly such a state of solvency does not meet the requirements of this case. The respondent was about to enter into a contract with the American Mill & Timber Company of considerable magnitude, and he applied to the ap-

pellant Cissna to ascertain whether the company was solvent
and able to perform its contract. Cissna was fully aware
of this and stated that the company was wholly solvent,
would pay one hundred cents on the dollar, etc. The repre-
sentations made by Cissna went far beyond the mere question
of solvency as defined by the National Bankruptcy Act, and
we think that character of solvency which permits one to dis-
charge his obligations as they fall due in the ordinary course
of business is the proper test in cases of this kind.

The court further instructed the jury that the fact that
the American Mill & Timber Company was insolvent in the
latter part of October or the first part of November, 1905,
was not of itself a presumption of insolvency on the 30th
day of June, 1905, but that it was an element which the
jury might take into consideration in determining the sol-
vency or insolvency on the 30th day of June, 1905, in con-
sidering all the evidence in the case, but not to be considered
as a presumption which must follow. This instruction is as-
signed as error. Whether in an ordinary action proof of
insolvency at one date may be considered in determining
the question of insolvency at an earlier date we will not in-
quire, for in this particular case the status of the American
Mill & Timber Company on the 30th day of June, 1905,
was shown in every detail, and we do not think its successes
or reverses in business during the following months had any-
thing to do with the question at issue, and the instruction
should not have been given.

There are a great many other errors assigned in the rul-
ings of the court in the admission and exclusion of testi-
mony, and in giving and refusing instructions, but these
questions may not arise on a retrial and are not of sufficient
importance to call for special consideration at this time.
We might say, however, in view of a retrial, that too much
importance seems to have been given during the trial to
matters that transpired long after the representations com-
plained of were made. The representations were false when

made, if false at all, and if the respondent relied upon them to his injury and all the essential elements of a cause of action were made out, what transpired thereafter would seem to be of no moment, except in so far as it tended to show the nature and extent of the respondent's injury.

The judgment of the court below is reversed, with directions to dismiss the action as to the appellant bank, and to award a new trial as to the appellant Cissna.

FULLERTON, CROW, DUNBAR, and MOUNT, JJ., concur.

GOSE and CHADWICK, JJ., took no part.