[No. 9670. Department Two. December 6, 1911.]

M. P. BLUM *et al.*, *Respondents*, v. WILLIAM J. SMITH *et al.*, *Appellants.*[1]

EXCHANGE OF PROPERTY—RESCISSION—FAILURE OF CONSIDERATION—EVIDENCE—SUFFICIENCY. There is a failure of consideration for the exchange of property, warranting a rescission and an action to set aside plaintiff's deed, where defendants agreed to transfer a lease of an apartment house, requiring the written consent of the landlord to the transfer, and defendants failed to secure the landlord's consent or to make any effective assignment; and where the defendants agreed to transfer by a bill of sale the furnishings and good will of the business, which was presumptively community property, and the bill of sale therefor was executed by the wife alone without the husband joining therein.

SAME—FRAUD—EVIDENCE—SUFFICIENCY. The vendee of a lodging house lease and furniture is not estopped from rescinding an exchange of property therefor by relying on representations that the vendors were owners of the lease and could transfer a good title thereto, and that the house and tenants were of desirable class, where gross fraud was committed and active steps taken to mislead.

HUSBAND AND WIFE—COMMUNITY PROPERTY—PRESUMPTION. Under the presumption that property acquired after marriage is community property, and in the absence of evidence that personal property was the separate property of the wife, her bill of sale thereof is a nullity, under Rem. & Bal. Code, § 5917, giving the husband sole management and control of community personalty.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered April 24, 1911, upon findings in favor of the plaintiffs, in an action for rescission and cancellation, after a trial before the court without a jury. Affirmed.

*Emerson H. Carrico*, for appellants.

*J. W. Brown*, for respondents.

ELLIS, J.—The respondents brought this action to rescind a contract for an exchange of real estate for a lease and the furniture of an apartment house in the city of Seattle, and

to set aside a deed of certain real estate, made by them to
the appellants, on the ground of fraud and deceit claimed to
have been practiced by the appellants to induce the ex-
change, and also on the ground of alleged failure of the
appellants to perform the contract on their part. The
cause was tried to the court without a jury. From a decree
rescinding the contract and setting aside the deed, the de-
fendants have appealed.

The agreement for the exchange was verbal, and the evi-
dence as to what the agreement actually was is extremely
conflicting. The court found, and we think the finding was
supported by a preponderance of the evidence, that it was
agreed that the defendants, appellants here, should transfer
by bill of sale to the plaintiffs, respondents here, an apart-
ment house known as the Metropolitan Hotel, consisting of
the furnishings, good will of the business, all advanced rents,
the books of the business, a lease of the premises with a
written consent from the landlord consenting to the transfer
and extending the lease for two years, and reducing the
rental from $450 per month to $375 per month; that, in
exchange for these things, the plaintiffs were to convey by
deed to the defendants the lots and acreage described in
the complaint.

It is admitted that on May 10, 1910, the respondents de-
livered a deed of the real estate to the appellants, and the
appellant Loretta Smith delivered to the respondents a bill
of sale of the furniture and furnishings in the apartment
house on its face purporting to be her separate instrument.
It was not signed by her husband, nor was he referred to
therein. The respondent Blum testified that he accepted this
bill of sale upon the assurance of Mrs. Smith and the agents
who negotiated the exchange that her husband's signature
was not necessary. There was, however, no evidence tend-
ing to show that this property was the separate property of
Mrs. Smith. She claimed that the failure of her husband

7—66 WASH.

to join in the bill of sale was a mere oversight. Upon receiving the bill of sale, respondents assumed possession of the premises. It appears that, on the same day, Mr. Blum, Mrs. Smith, and her agent, a Mr. Wilson, called upon West & Wheeler, agents for the owner of the hotel building, and sought to secure their consent to the transfer and an extension of the lease, but these agents refused to accept the respondents as tenants without further investigation. The respondent Blum gave them certain references and went away. A day or two later, Mrs. Smith delivered to the respondent Blum the lease, with an assignment executed by herself and husband. The lease by its terms could not be assigned without the written consent of the owner of the premises. Mrs. Smith claims that she then suggested that they go again to the property agents and secure their consent to the transfer; that Blum then stated that he could not go at that time, but that he would see to the matter himself; that he said he cared nothing about the lease and expressed dissatisfaction with the number of vacant rooms in the house, but at that time he gave her a written agreement to furnish abstracts of title to the real estate which he had conveyed to the appellants. Mrs. Smith then paid to the respondents about $32, which she claimed was the amount of advanced rents collected by her. Blum testified that he again called upon the property agents, and they again refused to consent to the transfer of the lease, and never at any time recognized him as a tenant. It appears that, at about this time the respondents determined to bring suit for a rescission, and made no further effort to secure recognition as tenants. The evidence shows that the lease had been formerly assigned by the Smiths to one Jarnigan, but that they still retained possession of it, and so far as the evidence shows, Jarnigan made no claim upon the property.

Both respondents testified, in effect, that during the negotiations leading up to the exchange, Mrs. Smith represented that the rooms of the hotel were nearly all occupied

by desirable tenants, and that the business was producing a monthly income of over $700, and represented the monthly operating expenses at about $400; that, when she exhibited the rooms for their inspection, all but thirteen of the eighty rooms showed evidence of tenancy, such as clothing, valises, and the remains of food and drink upon the tables; that she told them sixty-three of the rooms were occupied by desirable and good paying tenants, and that she was receiving for each of the rented rooms and apartments much more than she was actually receiving; that soon after they took possession, the fact developed that only about twenty-five of the rooms were occupied, and these for the most part by immoral people given to fighting and other disorderly conduct.

All of the foregoing testimony of the respondents was vehemently contradicted by Mrs. Smith, who testified to the effect that respondents were accorded every opportunity to investigate for themselves; that she told them that a great many of the rooms were vacant and that she made no representations as to what the monthly income and expense would be, but did tell them that business was then dull. The agents who negotiated the exchange also testified that they told the respondent Blum that many of the rooms were vacant. On the other hand, the respondents produced a paper showing figures which they claimed were made by Mrs. Smith in demonstrating the income and expenses of the business which corroborate their testimony as to her representations. Mrs. Smith did not deny that she made the figures, nor did she offer any satisfactory explanation of them. It also developed that the current taxes upon the furniture were unpaid.

One Lavenberg testified that the respondent Blum, shortly before this action was commenced, told him that he was going to sue to recover the property conveyed because there had been found trace of coal upon a certain twenty acre tract, and that, if he could recover this tract, he could make

a good sale of it. The testimony of this witness was not convincing, and in any event, we consider it of little materiality in view of the entire record. It was proven by a number of witnesses that the lots and acreage conveyed to the appellants by the respondents had a value of about $3,500.

On May 26, 1910, the respondents instituted this action, and both parties denying ownership, a receiver was appointed by the court to take charge of the furniture, which was finally sold by the receiver, under the direction of the court, for $700, which, with rents collected, remains in the registry of the court subject to the expenses of the receivership.

The foregoing analysis of the evidence makes it plain that the judgment of the trial court should be affirmed. It is manifest that the agreement of exchange was never performed by the appellants. There was a failure of consideration for the respondents' conveyance of their lots and land. The appellants did not make any effective transfer of the lease, nor secure an extension thereof, and the evidence makes it reasonably clear that they could not do so. In fact, Mrs. Smith stated that the appellants did not own the lease, and was finally driven to the position that all they attempted to sell was the furniture, a position contrary to the overwhelming weight of the evidence and utterly inconsistent with her own act in attempting to transfer the lease. While there was evidence to the effect that Blum said he would attend to the lease himself, and cared little for it anyway, that was after he had parted with his deed; and it is apparent, also, that was after he had discovered that the value of the business had been grossly misrepresented. The evidence was not sufficient to estop him from claiming the right to rescind. There can be little doubt that the appellants represented that they owned the lease, could transfer it, could procure the owner's consent thereto, and could procure an extension. These representations, under the evi-

dence, constituted actionable fraud. *Jankowsky v. Slade*, 60 Wash. 691, 111 Pac. 773.

The respondents also had the right to a valid bill of sale. They never received one, and none was ever tendered. In the total absence of evidence that the hotel furniture was the separate property of the wife, there is a presumption that it was community property of herself and her husband. The statute, Rem. & Bal. Code, § 5917, declares:

"The husband shall have the management and control of community personal property, with like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

On the record before us, had the bill of sale been executed by the husband and wife, or by the husband alone, it would have been sufficient. Having been executed by the wife alone, it was a nullity. Under the evidence adduced, the respondents were entitled to a rescission for failure of performance by the appellants. 17 Cyc. 836 *et seq.*

Moreover, the evidence sustains the court's finding that the appellants were guilty of fraud and deceit. A careful examination of the evidence convinces us that Mrs. Smith represented the monthly income from the business much in excess of the reality. She also represented that the tenants were of a desirable class. The evidence indicates that they were not. These were matters peculiarly within the knowledge of the appellants and unknown to the respondents. The respondents made an inspection of the premises, but neither of these things would be disclosed by an inspection, and there is evidence that vacant rooms were so arranged as to appear tenanted. The respondents had the right to rely upon these representations, especially when active steps were taken to throw them off their guard. That they did so rely, can hardly be questioned. *Johnson v. Ryan*, 62 Wash. 60, 112 Pac. 1114; *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102; *Best v. Offield*, 59

Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55; *Tacoma v. Tacoma Light & Water Co.*, 17 Wash. 458, 50 Pac. 55; *Simons v. Cissna*, 52 Wash. 115, 100 Pac. 200; *Stone v. Moody*, 41 Wash. 680, 84 Pac. 617, 5 L. R. A. (N. S.) 799; *McMillan v. Hillman, ante* p. 27, 118 Pac. 903; 14 Am. & Eng. Ency. Law (2d ed.), p. 123; Bigelow, Fraud, p. 524.

The trial court's findings of fraud and failure of performance on the appellants' part were sustained by the more convincing evidence. The court committed no error in entering the decree appealed from. It is affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.