[No. 13712.    Department Two.    July 17, 1917.]

S. W. BARKER, *Appellant*, v. SCANDINAVIAN-AMERICAN BANK, *Respondent*.[1]

FRAUD—MISREPRESENTING FINANCIAL STANDING — EVIDENCE—SUFFICIENCY. Damages for fraudulently misrepresenting the financial standing of a concern, which a bank officer, upon inquiry, assured the plaintiff was in good condition and would unquestionably take care of a credit about to be extended, cannot be recovered where it does not appear that the statements were made recklessly without knowledge of the truth, or as a positive statement, and the officer informed the plaintiff that the party was indebted to the bank and declined to take the note without recourse; especially where plaintiff was not satisfied and did not rely on the statements, but prosecuted further inquiry from another bank.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 14, 1915, upon granting a nonsuit, in an action for false representations, after a trial on the merits.    Affirmed.

*F. D. Oakley* and *Martin Rozema*, for appellant.

*Williamson, Williamson & Freeman*, for respondent.

MOUNT, J.—This appeal is from a judgment of nonsuit, entered upon the defendant's motion at the close of the plaintiff's evidence. The action was brought for the recovery of damages alleged to have been sustained by reason of false representations made by the defendant to the plaintiff in

[1]Reported in 166 Pac. 618.

reference to the financial condition of the Nelson-Johanson Mill Company, on July 7, 1910.

The facts, as shown by the evidence on behalf of the plaintiff, are substantially as follows: In the month of April, 1910, the appellant was engaged in logging operations, and the Nelson-Johanson Mill Company, a corporation, was operating a saw mill near Tacoma. In April of that year, the appellant received an order for some logs from the Nelson-Johanson Mill Company. On receiving this order, he visited the Scandinavian-American Bank, and had a conversation with Mr. E. C. Johnson, who was the cashier of that bank at that time. The appellant testified to that conversation as follows:

"I told Mr. Johnson (Cashier of Scandinavian-American Bank) I had been requested by the Nelson-Johanson Mill Company, or Mr. Nelson, to ascertain the financial condition of the Nelson-Johanson Mill Company. I told Mr. Johnson I would like to know what it was; Mr. Nelson had asked me to come there. Mr. Johnson said they were in splendid financial condition at the present time; some time previous to that they had been in close quarters, but he said that they had just put in $50,000 of fresh capital or new capital. I remember distinctly that he added to that, he says, 'I know that they have done it because they put it through our bank.' I asked Mr. Johnson if he would take the note without recourse and he says: 'Now, Mr. Barker, I have conferred with my associates, and we will take that note without recourse, provided you deposit the money here, open an account and do business with us.' "

After that conversation, the appellant sold a raft of logs to the mill company on April 5th of that year. He sold another raft on April 26th, another about the middle of May, and another about the last of May, 1910. For all of these sales, he received his pay. About the 5th or 6th of July, 1910, he received another order from the mill company, and again went to the bank to inquire into the financial condition of the mill company. He testified to that conversation as follows:

"I went to the (Scandinavian-American) bank to see Mr. Johnson, and I told him that I was there again about the Nelson-Johanson credit. Mr. Johnson had referred me,—he said, 'Just a minute; Mr. Pringle is here and I will introduce you to him. Step right around the corner.' I stepped around the corner and Mr. Johnson went to the door. He opened it and Mr. Pringle came out and Mr. Johnson introduced us. I said to Mr. Pringle, 'Mr. Pringle, I am here at the request of the Nelson-Johanson Mill Company; they want the logs and I will not extend credit unless I know the note will be taken care of.' He pulled his watch out of his pocket and he says, 'I am in a great hurry, I will have to catch a car in five or ten minutes,' he says. I says, 'This is a very important matter to me; they want the logs and I would like to sell them and I have come over to see about it. I won't sell—' He says, 'There is no question about their financial standing now.' He says, 'You are running no risk.' I says to him, 'Will you take the note without recourse?' And he says, 'No, I do not want to do that.' He says, 'This is a good time to get business; we don't want to put all of our eggs in one basket. We are now carrying them for their lumber shipment, which is a large amount, and we don't feel like putting any more money into the business. They are in good condition. Mr. Johanson is now managing the company, and there is no question about their taking care of it.' "

Appellant then testified:

"I had further inquiries made in reference to the financial condition of the mill. I immediately telephoned to Mr. C. S. Harley, cashier of the Mercantile Bank at Seattle and told him of my conversation with Mr. Pringle. I wanted it verified. I says, 'This is a very important thing to me; I cannot extend credit unless I am verified, and I want you to telephone. I will stay right here.'

"I heard from him (Mr. Harley) in about an hour or two in reference to this inquiry, as to the financial condition of the mill. Then I let them have the logs.

"After receiving the telephone communication from the Mercantile National Bank of Seattle, Mr. Harley, in reference to this matter I let the Nelson-Johanson Lumber Company have the raft of logs."

In payment of the raft of logs, the appellant took a promissory note for $3,878.31 from the Nelson-Johanson Mill Company. This note was dated July 14, 1910. It was never paid. On the 12th of August, following, the mill company went into insolvency, and was adjudged a bankrupt on the 29th day of August, 1910. On July 7, 1910, the mill company was indebted to one Gawley in the sum of $40,000 on promissory notes secured by a mortgage upon the mill property. At that time, the respondent bank held a mortgage of $100,000 upon the entire mill plant, and the Nelson-Johanson Mill Company, in addition to these amounts, owed the bank $68,000 of unsecured notes. On May 31, 1910, the mill company had furnished a statement of its resources and liabilities to the respondent bank, showing the total resources to amount to $388,000, in round numbers, and the liabilities, $272,000, leaving an excess of resources over liabilities amounting to $115,000. At the time of the bankruptcy, the liabilities of the mill company amounted to $323,000. Of that amount, it owed the bank $232,000. All of the property of the mill company was consumed in paying the obligations secured by the mortgages, so there was nothing left to the unsecured creditors.

Upon this state of facts, the trial court was of the opinion that there was no liability of the bank to the appellant in this case. In *Raser v. Moomaw*, 78 Wash. 653, 139 Pac. 622, 51 L. R. A. (N. S.), 707, we stated the rule, with reference to cases of this character, as follows:

"The essential elements necessary to constitute actionable fraud and deceit are, in the main, well settled. These elements are correctly set forth in 20 Cyc. 13. It is there said that 'it must appear: (1) that the defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff acted in reliance upon it; and (6) that he thereby suffered an injury.'"

See, also, to the same effect: *Simons v. Cissna*, 52 Wash. 115, 100 Pac. 200, and *Northwestern S. S. Co. v. Dexter-Horton & Co.*, 29 Wash. 565, 70 Pac. 59.

We think the evidence fails to show that Mr. Pringle, the vice-president of the Scandinavian-American Bank, knew the representations were false which were testified to by the appellant, or that such representations were made recklessly, without knowledge of the truth, or as a positive assertion. If the representations were made by Mr. Pringle with the intention that they should be acted upon by the appellant, it is plain that the appellant did not act in reliance upon such representations. It plainly appears from the evidence of the appellant himself that, prior to the 7th day of July, he had sold the mill company four rafts of logs. These rafts had been promptly paid for. Between the 30th of May and the 5th or 6th of July, the appellant evidently became apprehensive of the financial condition of the mill company with which he had been doing business, and he was referred again to the respondent bank to ascertain the company's financial condition. The bank, at that time, was a large creditor of the mill company. Mr. Pringle so stated to the appellant. The mill company owed the bank some $168,000. The mill company had furnished to the bank a statement showing its financial condition. This statement showed resources over $300,000, and liabilities over $200,000, so that the net resources over the liabilities was some $115,000. There is no showing in this record that the officers of the bank had any other knowledge of the financial condition of the company than was shown by this statement; and, as evidence of the fact that the bank relied upon this statement upon the very day the appellant inquired of the vice-president of the bank about the financial condition of the mill company, the bank loaned to the mill company an additional $10,000 upon its unsecured note, and subsequent to that time, the bank loaned an additional $25,000 upon the unsecured note of the mill company; indicating very clearly that, so far as the officers

of the bank were concerned, they believed at that time the mill company was in good financial condition. At most, we think the representations made to the appellant by Mr. Pringle, the vice-president of the bank, were expressions of opinion. In the case of *Simons v. Cissna, supra,* it appeared that Mr. Cissna was familiar with the affairs of the mill and timber company "down to the smallest detail." There is no evidence in this case that Mr. Pringle, or the bank of which he was vice-president, was acquainted with the condition of the Nelson-Johanson Mill Company, further than its financial statement, above referred to, shows. We are satisfied, therefore, that there was no showing that the representations made by Mr. Pringle were made falsely or recklessly, or with intent to deceive the appellant, or that he should act upon them independently, and, as shown by the appellant's own testimony, he did not act upon the representations made to him by Mr. Pringle. He testified that he was not satisfied with the statements of Mr. Pringle, and that he therefore telephoned to his banker in Seattle for information; and that, after his banker in Seattle had given him the information he desired, he then sold the raft of logs to the mill company and took its note therefor.

So it is apparent, from the record in this case, that the appellant did not rely upon the representations made by Mr. Pringle.

We are satisfied, for these reasons, that the trial court properly granted a nonsuit.

The judgment is therefore affirmed.

HOLCOMB, PARKER, and MAIN, JJ., concur.

ELLIS, C. J., took no part.