[No. 14260. Department Two. April 25, 1918.]

RICHARD STANTON, *Appellant*, v. R. H. ZERCHER *et al.*,
*Respondents*.[1]

FRAUD—SALES—RELIANCE ON REPRESENTATIONS. It is actionable deceit to induce the sale of a business by false representations as to the reputation and earnings of the business, and by exhibiting padded and falsified books and records misrepresenting and concealing the true condition and status of the business, since the purchasers may rely on such representations.

SAME—DECEIT IN SALE — GOOD WILL AND INCOME — MEASURE OF DAMAGES. In an action by way of counterclaim for damages for false representation in the sale of an insurance business and its good will, in which the evidence showed the falsity of the representations regarding the value of the good will as well as regarding the amount of the net earnings, the measure of damages was the difference between the net value of the business to the buyer, and the net value as it was represented, including the good will, properly defined as the faith of the public and the probability of the continuance of patronage, not as the business itself, but as part of the assets and personal property; and it is not error to include an in-

[1]Reported in 172 Pac. 559.

struction as to the good will, notwithstanding testimony that the consideration for the sale was based upon figures as to the commissions which the books showed would be earned.

SAME. In such a case, the defrauded buyer is entitled to the highest measure of damages allowable under the law and facts, not exceeding the total unpaid consideration, including the good will, which was a calculable item under the facts, although not estimated in any given sum by any witness.

TRIAL—INSTRUCTIONS—CONSIDERED AS A WHOLE. Error cannot be predicated upon an instruction which might appear to be misleading, standing alone, where the jury were very fully and properly instructed as to all the issues in other instructions.

FRAUD—DECEIT IN SALE — ACTION FOR DAMAGES — INSTRUCTIONS. Upon an issue as to deceit in misrepresenting the net income of an insurance business sold to the defendant, in which there was evidence of deceit by padding books and of unlawful rebating and of the bad reputation of the plaintiff as an insurance agent, instructions thereon are proper as being within the issues.

SAME. Upon an issue as to deceit in misrepresenting the "net income" of a business sold to defendant, in which witnesses as to the income did not always use the word "net," instructions as to the "net income" are proper, since "income" would necessarily mean "net income" and not merely gross receipts.

SAME. Upon an issue as to deceit in misrepresenting the value of the good will and net earnings of an insurance business, sold to the defendant, in which there was evidence of false representations both as to the good will and earnings, from which damages were sustained, requested instructions on the theory that the value of the business was arrived at solely by determining the amount of commissions from a renewal of business on the books are properly refused.

Appeal from a judgment of the superior court for Benton county, Kauffman, J., entered January 5, 1917, upon the verdict of a jury rendered in favor of the defendants, in an action on promissory notes. Affirmed.

*Moulton & Jeffrey,* for appellant.
*Hal. H. Cole,* for respondents.

HOLCOMB, J.—This controversy arose over the purchase by the respondents from the appellant, on about August 18, 1914, of a certain insurance and loan busi-

ness in Kennewick, Washington, for a consideration of $4,830, on which was paid the sum of $2,000 cash at the time of the transaction, and notes aggregating $2,830 were given for the remainder. Certain payments were thereafter made and credit given therefor, as a result of which the trial court instructed the jury that the amount of recovery upon the notes in principal totaled the sum of $2,843.63, with interest thereon at twelve per cent per annum from June 7, 1916, the date of the commencement of the action, to the date of the submission to the jury, in case appellant recovered against respondents. The interest, as above specified, would have aggregated $161.12, making the total recovery, in case appellant had recovered anything, $3,004.75, principal and interest.

As an affirmative defense and by way of counterclaim to appellant's complaint, respondents alleged certain false and fraudulent representations made by appellant in negotiations leading up to the sale, as follows: That the business of appellant was an old established business; that there were no others in the field and no chance for them to come in; that the business had increased largely in volume during the year next prior to the transaction; that the values at which the various properties upon the books of appellant were insured were the correct insurable values; that his reputation as an insurance man, as well as the reputation of Stanton's Insurance Office, in Kennewick and vicinity was good, and that, in case the business was continued under the name of Stanton's Insurance Office, people would continue to do business with the office on account of the standing and reputation of Stanton, appellant advising respondents to continue the business under the name of Stanton's Insurance Office; that, in connection with the insurance business, he had been,

and then was, agent for the Pacific Building & Loan Association, which agency and business he would turn over to the respondents, and that he had been deriving from the insurance and loan business a total monthly net commission income of four or five hundred dollars; that the good will of the business was valuable, and that the appellant's standing and reputation, as well as the standing and reputation of the office, was good; that the insurance business, including the furniture and fixtures of the office and the good will of the business, together with the agency of the Pacific Building & Loan Association, was reasonably worth the sum of $4,830. It is claimed that all the foregoing representations were false, and that appellant knew them to be false when made.

In addition to the foregoing, respondents claim that, after taking over the business, they discovered that the business had not been on the increase for the preceding year; that the reputation of the appellant was bad; that the business had not been earning the income of $400 or $500 per month, and that it had not been earning any income in excess of $250 per month; that the books and records which had been exhibited to him by the appellant were padded and falsified, and that the true condition and status of the business had been concealed from the respondents; that the properties covered by insurance were insured beyond their actual valuation and in violation of the law; that the good will of the business was of little or no value; that the appellant had been paying and allowing commissions and rebates to various persons and corporations in order to secure business; that the agency of the Pacific Building & Loan Association had been discontinued, and that the insurance business was not worth to exceed the sum of $1,830. Respondents further alleged that they relied upon the representations made to them concerning the

business, believed the same to be true, would not have purchased the business had they known the same to be false, and that they were accordingly damaged in the sum of $5,000.

All of the alleged fraudulent representations were denied by appellant in his reply.

The issues were submitted to the jury, and at the close of the trial, the court instructed the jury that appellant was entitled to recover on his notes, with interest at twelve per cent per annum from June 7, 1916, as heretofore stated, and that, if the jury found the respondents were entitled to recover more than this amount, their verdict should be for respondents to the extent of such excess; that, if they found that respondents' damage exactly equaled the amount due appellant, their verdict should be for respondents, and if they found that the amount of respondents' damage, if any, was less than appellant was entitled to recover, their verdict should be for appellant for the difference. The jury returned a verdict for the respondents; in other words, finding that the damage to respondents was exactly equal to the amount which appellant would otherwise be entitled to recover. Judgment thereon for costs was entered by the clerk against appellant.

In due time appellant filed his motion for judgment notwithstanding the verdict and for a new trial in the alternative, which motions were denied by the court, and a formal judgment dismissing appellant's action and allowing respondents their costs and disbursements was entered.

Twenty-eight errors are claimed by appellant, divided into nine groups. Under the allegations of respondents' affirmative answer that the representations made by appellant, if false, constituted actionable fraud and deceit and that respondents had the right to rely upon them, is well settled by the decisions of this

court.  *Gilluly v. Hosford,* 45 Wash. 594, 88 Pac. 1027;
*Blum v. Smith,* 66 Wash. 192, 119 Pac. 183; *Gillette v.
Anderson,* 85 Wash. 81, 147 Pac. 634; *Christensen v.
Koch,* 85 Wash. 472, 148 Pac. 585; *Duffy v. Blake,* 80
Wash. 643, 141 Pac. 1149; *Sowles v. Fleetwood,* 97
Wash. 166, 165 Pac. 1056.

Appellant's claims of error are so numerous, in-
volved, and intricate that they cannot be separately
discussed fully within the proper limits of this opinion.

One of the principal claims of error is that the ques-
tion of good will of the business should not have been
submitted to the jury.  The court, as appellant says
correctly, instructed the jury that the measure of re-
spondents' damage, if any, was the difference between
the value of the business which they actually got and
the value it would have had had it been as represented,
to wit, its purchase price, in this case $4,330, the sum
of $500, which was given for office furniture and fix-
tures, not being in controversy.

To determine this difference it was, of course, neces-
sary for the jury to determine the value of the busi-
ness as it was when respondents received it, and for the
purpose of guiding the jury along this line, the court
gave, among others, instructions numbered 8 and 17.
In instruction No. 8 they were told:

"Your first inquiry naturally will be: 'What was the
thing which the plaintiff sold outside of the tangible
personal property consisting of the furniture and fix-
tures?' To my mind, it was nothing more or less than
the good will of the concern  . . .  I charge you that
this is the law of this case.  A learned English judge
has said that by the  term 'good will' is meant 'every
advantage that has been acquired by the old concern
by carrying on its business.  Everything connected with
or carrying with it the benefit of the business.'  Tested
by this definition, what did the defendants buy?  In my
opinion, they bought the reputation which the Stanton

agency had built up in the community, its right to rep-
resent and solicit business for the companies which it
had on its bills, its ability to earn commissions on re-
newals of insurance, its ability to earn commissions on
new business to be acquired, and the probability that,
by reason of its standing and reputation in the com-
munity that new business would come to the concern.''

In No. 17 the jury were told:

''To sum up; if you believe from the evidence here
that the plaintiff made any or all of these representa-
tions, that such representations or any of them are
false, were known by him at the time to be false, or
were not known by him at the time to be true, or that
he suppressed the truth concerning any of these mat-
ters, of which it was his duty to speak, that the defend-
ants relied upon the truth of these representations,
either active or passive, and could not by reasonable
diligence have ascertained their falsity, that as a re-
sult thereof they bought the business and that they
paid therefor a sum in excess of the value of the good
will of the business as I have defined it, then they have
been damaged by the making of these representations
and it will be your duty to ascertain and fix the sum of
such damages.''

Appellant complains that, because both appellant
and respondents testified that the consideration for
the sale was arrived at by ascertaining the amount
which one renewal of the business then on the books
would produce in the form of commissions, which was
found to be $4,330, all of the testimony and the instruc-
tions as to the good will were outside the issues and
were no proper basis for the ascertainment of dam-
ages, and that no data were given the jury upon which
to ascertain the value of the good will and the damage
occasioned by the loss thereof.

Authorities are cited and quoted by appellant deal-
ing with actions *ex contractu* to recover damages for
breach of contract conveying good will where the vend-

or violated his contract not to engage in business for a definite period of time under the terms of the sale, to the effect that, while such damages are rarely susceptible of accurate proof, the measure generally expressed is the value of business lost to plaintiff; not the gain to defendant, which may be more or less than plaintiff's loss, though such gain may be considered in evidence. It should be shown to correspond, in whole or in part, with the loss of the plaintiff; nothing appearing of the amount of the plaintiff's loss, the allowance of damages beyond a nominal sum is error.

But here, while, by the terms of the instrument of conveyance given by appellant to respondents, appellant conveyed the good will of the business and agreed not to engage in any manner in the business thereby conveyed during a period of ten years from the date of the contract, in Kennewick or within a radius of forty miles thereof, this is not an action for the violation of that term of the contract, but is an action by way of counterclaim for the damages sustained by respondents by reason of the misrepresentations of appellant as to the value of the business at the time of the sale, including the value of the reputation and the good will of the business.

It was shown by competent evidence on behalf of respondents, which the jury evidently believed, and appellant and this court are concluded thereby, that the representations made by Stanton as to the good reputation of his insurance business, the income of the business for the year preceding, the amount of the business on the books which could and would be renewed, and the business on the books being clean good business, were all substantially false and untrue; that, on the contrary, the net earnings of the business for the preceding year had not been to exceed $200 or $250 per month, instead of $400 or $500 per month as represent-

ed; that the reputation of Stanton's Insurance Office was not good but bad; that as such it was injurious rather than valuable; that the reputation of Stanton as an insurance agent was that of a rebater, and, therefore, a violator of the law; that, in fact, he had a pending contract with a concern from which he had purchased the business to give it and the officers and employees thereof rebates of from one-third to one-half of the commissions of all business, and, in some instances, the entire commission; that all these representations having been found untrue, the difference between the net value of the business to respondents and the net value of the business as represented was the thing upon which the jury had to base its verdict. In addition to that, it was entitled to allow to respondents a recovery of the value of the good will of the business as represented by appellant. Good will was correctly defined by the court in its instruction complained of, but the measure of damages was somewhat unduly restricted and narrowed against respondents.

"Good will" has been defined by the courts to be the faith which the manager of a business wins from the public and the probability that old customers will continue their patronage. *Chittenden v. Witbeck,* 50 Mich. 401, 15 N. W. 526; *Williams v. Farrend,* 88 Mich. 473, 50 N. W. 446, 14 L. R. A. 161. It comprises these advantages which may inure to the purchaser from holding himself out to the public as succeeding in an enterprise which had been conducted in the past with the name and repute of his predecessor. *Knoedler v. Boussod,* 47 Fed. 465. The good will of the business is not the business but is one result springing out of it. It would be too narrow to construe the word "business" to be the good will of the business. *McGowan v. Griffin,* 69 Vt. 168, 37 Atl. 298. The good will of the business is a species of personal property, and although insep-

arable from business, is an appreciable part of the assets of a concern, both in fact and in the estimation of the courts. It is a portion of the subject-matter which produces profits. Story, Partnership, § 99; Lindley, Partnership, 842; *Morgan v. Perhamus,* 36 Ohio St. 517, 38 Am. Rep. 607. That it is property is abundantly settled by authority. *See v. Heppenheimer,* 69 N. J. Eq. 36, 61 Atl. 843.

It is evident that the good will alone could not be mathematically determined, nor could respondents or any other witnesses put a mathematical value upon it. It was to be a valuable asset which went along with the other assets of the business, and was a thing which was misrepresented by appellant, under the facts found by the jury, as much as any other thing was misrepresented. The damages claimed by respondents amounting to $5,000 included the good will, and, in fact, the good will included almost everything transferred by appellant to respondents. It might possibly be said to include the renewals of insurance on the books, or represented by appellant to be on the books or existent. But certainly the good will of the business was something more than merely the amount of commissions on premiums and commissions on loans which might have been shown by appellant's books or in any way misrepresented as belonging to him, and therefore the aggregate damage sustained by respondents, which included the loss of good will of the business, might have been found by the jury, within the limits of the evidence and the allegations of respondents, in a sum considerably exceeding the difference between the value of the renewals of business as represented and actually and legally existing at the time of the sale.

The fraud in the sale being established to the satisfaction of the triers of the facts, the defrauded vendee would be entitled to the highest measure of damages

allowable under the law and the facts.  The jury, having resolved the facts in favor of recovery by respondents, allowed an exact offset of the amount of the unpaid purchase money and interest thereon as a counterclaim in damages, evidently basing the award upon the fifty per cent or sixty per cent of the business represented and not received, and the total good will of the business as represented and sold but not received. While this item of good will was not estimated in any given sum by any witness, it was a calculable item under the facts before the jury, although it could not exceed the total consideration, nor should it here exceed the amount thereof which respondents, having paid part, had yet to pay; in other words, the exact damages sustained.

The jury accordingly awarded exact compensation to respondents and substantial justice was done.  We think the court did not err against appellant in giving the instructions complained of.

Complaints are made as to instructions numbered 6, 10, 15, 17 and 19.  Instruction 6 told the jury that the burden of proof was upon the defendants to prove to the satisfaction of the jury their allegations as to misrepresentations by the greater weight of the evidence, and in case defendants failed so to prove their allegations, the verdict of the jury must be for the plaintiff in the full amount of his claim, *unless the jury found that false representations were made in other respects*.  This instruction standing alone might appear to be misleading, but the court very fully instructed the jury as to all the issues of fact between the parties.  Instructions numbered 10, 15, 17 and 19, complained of by appellant, relate to the reputation of appellant and his insurance office and business and padding of the books and rebating.  There can be no doubt that the court correctly instructed the jury as to what

constituted rebating, and in so doing quoted the statutes of this state; and there can be no doubt that there was evidence and inference to be derived from evidence on the part of respondents that appellant was guilty of rebating under the definitions given, and also of padding his books. There was also proper and competent evidence of the bad reputation of appellant as an insurance agent, and his insurance office as an insurance business. These instructions applied to the facts in controversy and were in no sense improper or erroneous.

Appellant's assignments of error numbered 18, 19 and 20 relate to certain instructions given by the court which appellant asserts assume the existence of a state of facts never contended for by respondents, and which must have radically misled the jury. These complaints refer to a subdivision of instruction No. 4 and instructions numbered 12, 13 and 15. The specific errors alleged consist of the use of the words ''net income'' instead of ''income.'' For instance, in subdivision C of instruction 4, the jury were told by the court ''that the plaintiff represented the business which the concern had been doing had been increasing during each month of the prior year and the emoluments thereof in proportion, and that he was receiving from said business a *net income* of $500.'' This instruction occurs in the statement by the court of the fraudulent misrepresentations alleged by respondents, and correctly states the allegations of respondents. In instruction No. 12, the jury were told that, if they found that the plaintiff represented the income of the concern had been increasing during each month of the year prior to the deal and that he was receiving from the business a monthly *net income* in the neighborhood of $500; that the jury were satisfied that the income from the business had been either stationary or diminishing during

such period and the plaintiff knew this, and that the defendants, by reasonable diligence, could not have ascertained the falsity of this statement and parted with something of value, by reason thereof and in reliance thereon, and were damaged thereby, they have a right to recover or set off in this case the amount of such damage. In instructions numbered 13 and 15 the allegations and theories of the respondents were again referred to as referring to the *net income* of the business or office instead of the gross receipts or gross income.

The allegations of respondents were that the *net income* for the preceding year and at the time of the sale were represented to be so much. Sometimes, in testifying upon the subject, respondents did not include the word "net" but spoke of the representation as to "income," and appellant accordingly claims that the testimony did not sustain the allegations as to representations of *net income* being so much per month, but would sustain the representations as to gross income only. "Income" is defined as that *gain* which proceeds from labor, business or property of any kind; the profits of labor, commerce, or business. 4 Words & Phrases, 3501. "Gain" signifies the difference between the receipts and expenditures. In the ordinary and popular meaning, where representation of "income" is made, one would necessarily understand that it meant the "net income." It would certainly not be taken to mean merely the gross receipts of a business or property. There was no fault, therefore, with the instructions referring to *net income*, nor was there any variance in the evidence of respondents referring to the "income" represented to them instead of the "net income" of the business.

Errors were assigned upon the refusal of the court to give instructions requested by appellant which, up-

on the theory of respondents, were inconsistent with those given by the court as to the method of determining the damages sustained by respondents, if any, and were based upon the theory that the value of the business was arrived at solely by determining the amount in the form of commissions which one renewal of the business then upon the books would produce. But since we have found that respondents sought to recover by way of counterclaim the value of the good will of the business and the difference between the value of the business as represented and its actual value, and that these were proper elements of damage, it is not necessary to discuss the refused instructions. They were improper and properly refused.

Other claims of error relate to the reception and rejection of testimony. We have examined these alleged errors and find no merit in any of them under the issues to be determined.

We find no error justifying reversal. Affirmed.

ELLIS, C. J., CHADWICK, and MOUNT, JJ., concur.