[No. 15654. Department Two. July 8, 1920.]

VIOLET M. KELLY et al., Respondents, v. WILL H.
MERRITT et al., Appellants.[1]

FRAUD (6, 22)—RELIANCE ON REPRESENTATIONS—EVIDENCE—SUF-
FICIENCY. The purchasers of an apartment house lease are entitled
to rely on representations of real estate brokers that a purchaser of
the apartment house on sheriff's sale, assuming to be the owner of
the premises and consenting to an assignment of the lease, was the
owner and had agreed to renew the lease, and may recover for fraud
upon proof that the representations were false.

EVIDENCE (204)—EXPERT TESTIMONY—VALUE OF APARTMENT
HOUSE LEASE. The testimony of a real estate man experienced for
many years in buying and selling apartment house leases in the
same city, that a lease is worth fifteen months' profit, is competent
upon an issue as to the amount of damages from loss of the pur-
chase of a lease through fraud.

FRAUD (23)—DAMAGES—MEASURE. The measure of damages for
fraud resulting in the loss of the purchase of an apartment house
lease is the difference between the value of the apartment as it
was, and what it would have been if the lease could have been pro-
cured.

Appeal from a judgment of the superior court for
King county, Smith, J., entered June 9, 1919, upon the
verdict of a jury rendered in favor of the plaintiffs,
in an action for damages for fraud. Affirmed.

*Winter S. Martin* and *A. C. Hough,* for appellants.
*Ballinger & Hutson,* for respondents.

MOUNT, J.—This action was brought to recover dam-
ages against the defendants on account of alleged
false and fraudulent representations in the sale of
an apartment house. Upon issues joined, the case
was tried to the court and a jury, and resulted in a
verdict and judgment in favor of the plaintiffs for
$1,500. The defendants have appealed.

[1]Reported in 191 Pac. 404.

A large number of errors are assigned, but the principal points argued by the appellants are that the court erred in refusing to grant a nonsuit at the close of the plaintiffs' evidence, and in refusing to grant a judgment notwithstanding the verdict at the close of all the evidence. The appellants vigorously contend in this court that the rule of *caveat emptor* should apply, and because it was within the power of the plaintiffs to learn all of the facts, and because they did not do so, they cannot now recover for false representations, even if made.

Since the case was tried to a jury and a verdict returned in favor of the plaintiffs, we must assume, for the purpose of this appeal, that the facts as stated by the appellants are true. These facts are in substance as follows: In March, 1918, the respondents were desirous of purchasing a lease running from three to five years on an apartment house. They applied to the appellants, who were acting as real estate brokers in the city of Seattle, and were introduced to a Mr. Arnold, who was then in the employ of the appellants. Mr. Arnold showed the respondents several apartment houses which were not suitable. He also showed to the respondents an apartment house known as the "Oleta." He stated to the respondents that this apartment house had a short time lease, but that the owner of the house would make a new lease of from three to five years at an advanced rental. The lease in effect at that time expired in September, 1918, and carried a monthly rental of $350. Mr. Arnold stated that the owner had been seen and that a three to five year lease could be procured upon this apartment at about $500 per month after the expiration of the short term lease. He advised respondents to take an assignment of the short term lease and in that way save $150

per month for the time of the short term lease, and thus saving about $900. This was satisfactory, and the respondents thereupon agreed to pay $5,500 for the furniture and the lease upon this apartment house, which was to be extended for a period of from three to five years after the expiration of the lease then in effect. The lease then upon this apartment house was owned by one Bellingham, who had possession of the house. He had listed this lease and furniture for sale at $5,500. There was a mortgage upon the furniture for $2,500. It was agreed that the respondents should assume that mortgage and pay the balance, $3,000, in money and notes. A mortgage upon the apartment house which had been given by the owner of the fee had been foreclosed and the apartment house had been purchased by Ivan L. Hyland. The time for redemption had not yet expired. Respondents did not know these facts and were not informed thereof.

At the time the respondents agreed to purchase the lease, Mr. Arnold, who represented the appellants, stated to them that he had seen the owner of the property and the owner had agreed to extend the lease from three to five years at an additional rental after the expiration of the lease then in force. When requested by the respondents to see the owner and interview him, Mr. Arnold stated that they could see the owner when the final papers were prepared. Thereafter Mr. Merritt, one of the appellants, stated to the respondents, in substance, that he was an attorney at law and that he would see that their interests were protected if they desired him to do so. On March 20, respondents were told that Mr. Hyland was the owner of the premises and that he had consented to a renewal of the original lease from three to five years and that they would go to his office and the papers

would there be made out. Thereupon Mr. Bellingham, who held the short term lease, and the respondents, with an attorney selected by appellants, and Mr. Arnold went to the office of Mr. Hyland. Mr. Bellingham, Mr. Arnold and the attorney who represented the respondents, went into Mr. Hyland's private office. The respondents waited in the outer office. After a conference of a few minutes, Mr. Arnold returned to the outer office and informed the respondents that the owner had agreed to extend the lease for a period of three to five years at a *little less* than $500 per month. Thereupon Mr. Hyland dictated an assignment of the short time lease from Bellingham to the respondents. Mr. Hyland consented to the assignment in writing and the respondents agreed to accept the assignment of the lease. The consent by Mr. Hyland reads as follows:

"The undersigned, Ivan L. Hyland, purchaser at sheriff's sale of the above described premises under mortgage foreclosure against Huldia E. Johnston, do hereby consent to the foregoing assignment.

"Dated this 23d day of March, 1918.
                                    "Ivan L. Hyland."

The respondents went into possession of the building, and at the expiration of the short term lease in October, 1918, were ousted by Mrs. Johnston, who had redeemed from the foreclosure and refused to extend the lease.

Under the facts testified to by the respondents, as stated above, we are satisfied there was no duty on the part of the respondents to inquire further whether Mr. Hyland was actually owner of the property or whether he would consent to a renewal of the lease. According to the respondents' testimony, the appellants had sent an attorney along with the respondents, and this attorney was supposed to look out for the

interests of the respondents on the assignment of the
short term lease. When Mr. Arnold had stated that
Mr. Hyland was the owner of the property and that
he consented to an assignment of the short term lease
and to an extension thereafter of three to five years
at less than $500 per month, it stands to reason, we
think, that they had a right to rely upon that repre-
sentation. It is argued here that the consent to the
assignment signed by Mr. Hyland was itself notice of
the fact that he was not the owner of the premises.
It may be that one versed in the law might conclude
that a purchaser at sheriff's sale was not the absolute
owner of property so purchased, but it is plain, we
think, that an ordinary person, not knowing perhaps
of the right of redemption in another person, would
conclude that Mr. Hyland, the purchaser, was the
actual owner. The attorney selected by the appellants
to represent respondents upon that occasion did not
advise respondents that Hyland was not the lawful
owner of the premises at that time. In any event, we
are satisfied that the respondents were entitled to rely
upon the statements made by Mr. Arnold to them
upon that occasion, and that the rule of *caveat emptor*
should not apply under those facts. When the appel-
lants, through their employee, Mr. Arnold, represented
to the respondents that Mr. Hyland was the owner of
the premises and that he would consent to a renewal
of the short term lease from three to five years, we
think the respondents were under no obligation to
make further inquiry. *Blum v. Smith*, 66 Wash. 192,
119 Pac. 183. In *Christensen v. Koch*, 85 Wash. 472,
148 Pac. 585, in discussing the question of whether the
vendee may rely upon the representations of his ven-
dor, it is said:

"Ordinary prudence does not require a person to
test the truthfulness of representations made to him

by another as of his own knowledge with the intent that they shall be believed and acted upon, even though the party to whom such representations are made may have an opportunity to ascertain the truth for himself.''

See, also, *Eyers v. Burbank Co.*, 97 Wash. 220, 166 Pac. 656.

When these respondents were taken into the office of Mr. Hyland, they were informed that he was the owner of the apartment house. They clearly had a right to rely upon that information. According to their testimony, an attorney to represent them was sent along by the appellants. There was no statement and nothing said to lead the respondents to understand that Mr. Hyland was not the absolute owner, authorized not only to consent to the assignment of the short term lease, but authorized also to make a renewal lease at the expiration of the short term lease. The respondents were told in Mr. Hyland's office that he had consented to make a renewal lease. Mr. Hyland had made no such promise. We are of the opinion that the respondents had a right to rely upon representations made with reference to the renewal of the lease, and when they were dispossessed at the expiration of the short term lease, had a right to recover damages against the appellants, who were responsible for the false representations. The trial court, therefore, did not err in refusing to grant the nonsuit or in refusing to grant a judgment notwithstanding the verdict.

Appellants assign error upon the refusal of the court to give certain requested instructions. No argument is made thereon except to say that their refusal was error and that the same points are not covered by the court in his instructions. We have examined the instructions given by the court. They are full and

clearly present the questions submitted to the jury and, we think, cover the whole case. It is therefore unnecessary to review these requested instructions.

Appellants also argue that the court erred in refusing to strike the testimony of a witness who testified in substance that a lease upon an apartment house is worth fifteen months' profit. The witness, if we understand him correctly, was attempting to testify that it would take fifteen months' profit of the business of an apartment house to pay for the lease. This witness was an experienced real estate man engaged for many years in buying and selling leases on apartment houses in Seattle. We are of the opinion that his evidence was entitled to consideration upon the question of damages recoverable in a case of this kind. At any rate, it was evidence that the jury might reasonably consider in determining the amount of damages. The court very properly instructed the jury that the measure of the damage was the difference between the value of the apartment as it actually was and what it would have been if the lease could have been procured for three years at $500 per month.

We find no merit in any assignments of error. The judgment is therefore affirmed.

HOLCOMB, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.