[No. 6567. Decided March 8, 1907.]

Ellen C. Gilluly, *Appellant*, v. A. A. Hosford, *Respondent*.[1]

Sales—Fraud—Corporate Stock—Evidence—Sufficiency. In an action by a vendee for deceit in the sale of corporate stock, the evidence is sufficient to sustain findings to the effect that the vendor made fraudulent representations concerning the dividends that would be paid on the stock, although he testified that he made no representations and never met the plaintiff until the consummation of the sale, where the plaintiff testified that the representations were made by the defendant at an interview prior to the sale, and she was corroborated by one witness to the extent that the defendant met and conversed with her at that time, and where it further appears that two sales of stock were made, about two months apart, and during the interval the defendant paid the plaintiff dividends for two months on the first stock purchased corresponding with the alleged representations, and which were greatly in excess of the actual dividends earned during that time.

Same—Diligence of Vendee—Reliance on Representations. A vendee purchasing stock in a corporation, and having no knowledge of the assets or business of the corporation, may rely on representations of the vendor as to the value of the stock and the amount of dividends that the stock would yield, without making an investigation to ascertain the facts.

Same—Representations as to Values—Opinions. Representations by the president and manager of a corporation as to the value of the corporate stock and the amount of dividends that it would yield are not mere expressions of opinions, but are actionable if false.

Same—Evidence—Similar Facts—Showing Value. In an action by a vendee for fraudulently representing the value of corporate stock to be one dollar per share, it is error to exclude evidence that at the time of the sale the defendant was making similar sales or offering to sell the same stock at fifty-five cents per share, the same being admissible on the question of value and as affecting the credibility of the witness in general.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 26, 1906, upon

[1]Reported in 88 Pac. 1027.

findings in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action for damages for fraud and deceit in the sale of corporate stock. Reversed.

*G. K. Gilluly* and *J. M. Simpson*, for appellant.
*Peacock & Ludden*, for respondent.

RUDKIN, J.—On the 7th day of April, 1904, the plaintiff purchased from the defendant 6,000 shares of the capital stock of the Washington Steam Laundry Co., of the par value of $1 per share, for the sum of $6,000. On the 19th day of September, 1904, a further purchase of 6,500 shares of the same stock was made for the sum of $6,000. The second block of stock was paid for as follows: $200 cash, the balance by three promissory notes for $800, $1,500, and $3,500 respectively, the latter note secured by chattel mortgage on the furniture and fixtures in the Rainier Grand Hotel in Spokane, owned by the plaintiff. On April 7, 1905, a further agreement was entered into, whereby the defendant released the chattel mortgage on the hotel furniture and fixtures, and accepted the promissory note of the plaintiff for the balance due on the purchase price of the stock, with accrued interest, secured by a deposit of the 12,500 shares. The plaintiff contends that this latter agreement was entered into for the sole purpose of procuring a release of the chattel mortgage, and this contention is fully borne out by the testimony. The present action was brought to recover damages for fraud and deceit in the sale of the two blocks of stock.

Without going into the details of the complaint, it was averred that the defendant made sundry false representations as to the assets of the corporation, represented that the first block of stock was of the value of $1 per share, and would yield monthly dividends of from $90 to $125, and that the monthly dividends would average not less than $100. Similar representations were made as to the value of the

second block of stock, and it was further represented that both blocks would yield monthly dividends of from $175 to $250. The complaint then averred that the first block of stock was not worth to exceed 40 cents per share, at the time of the sale to the plaintiff, and the second block not to exceed 50 cents, and that the dividends were much less than represented. The complaint contained the usual allegations of fraud and knowledge on the part of the defendant and want of knowledge on the part of the plaintiff. The prayer was for a cancellation of the note given for the balance of the purchase price, and a judgment for the excess paid over the actual value of the stock. The answer substantially denied the allegations of the complaint, and, after proper affirmative allegations, prayed judgment against the plaintiff for the balance due on the purchase money note. The court found that the defendant made no representations whatever as to the value of the stock or as to dividends to accrue thereon, at or before the sales, and found that the actual value of the stock was $12,000 paid therefor, and entered a judgment of dismissal. From this judgment the plaintiff has appealed.

Both sales were negotiated, in a measure at least, through Roy M. Heath, a driver in the employ of the Laundry Company. The court found that Heath was not the agent of the respondent, and this finding is in accordance with the testimony. The appellant testified that the respondent came to her hotel on the day before the consummation of the first sale, represented to her that he and her deceased husband belonged to the same lodge, expressed a desire to do anything he could to aid her, represented that the stock was of the value of $1 per share, and would make a good investment; that the dividends on the stock would run from $90 to $125 per month, and offered a written guaranty that the dividends would not fall below $75 per month; that similar statements and representations were made at various times prior to the second sale; and that the respondent represented

that the dividends on the two blocks of stock would yield from $175 to $250 per month.

To the extent that the respondent was at the appellant's hotel and conversed with her on the day preceding the first sale, the appellant is corroborated by the testimony of her adopted daughter. The respondent, on the other hand, testified that he made no representation whatever as to the value of the stock or the amount of the dividends on either sale, and that he never saw the appellant until he met her in the attorney's office at the time of the consummation of the first sale. If nothing further appeared in the case, we would feel constrained to accept the findings in favor of the respondent on the issue of fraud. But it appears from the uncontradicted testimony that the appellant was paid 'dividends on the first block of stock purchased, for the months intervening between the two sales, by the personal check of the respondent, and that the amounts so paid were substantially double the amount of the dividends which actually accrued on the stock. Thus, the actual dividends on the 6,000 shares for the month of May was approximately $72; amount actually paid, $94; actual dividends for the month of June, less than $25; amount paid upwards of $80; actual dividends for the month of July, less than $32; amount paid upwards of $70; actual dividends for the month of August, less than $25; amount paid, upwards of $60. This testimony was neither explained nor contradicted, and the excuse offered by the respondent for failing to produce his personal checks showing these several payments and the amounts thereof was wholly unsatisfactory. In the absence of some explanation for such conduct, but one inference can be drawn. Either the respondent defrauded the appellant in the sale of the first block of stock as alleged, and was endeavoring to conceal the fraud from her, or he was laying his plans to defraud her in some future sale. Had the appellant been paid only the actual dividends accruing on her stock for the months next after her purchase, there is little likelihood

that she would have made further investments of the same kind.

The respondent contends, however, that the means of ascertaining the value of the stock and the amount of the dividends were at hand, and if the appellant failed to make inquiry and ascertain the facts for herself, she is in no position to complain. The rule of law which the respondent invokes has no application here. The appellant had no knowledge of the assets or business of the corporation, the value of its stock, or the dividends the stock would yield; she was compelled to obtain information from some source, and as said by this court in *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880, because she chose to rely on the representations of the respondent, he cannot be heard to assert, as a means of escaping liability for making the representations, that the appellant should have gone to someone less reckless in their statements. Again, it is contended that the representations as to value of the stock and the amount of dividends were mere expressions of opinion and are not actionable. Positive statements made by the president and manager of a corporation having an established business, as to the value of its stock and the dividends which that stock will yield, are something more than mere expressions of opinion. On the entire record we are satisfied that the respondent made the representation as to the value of the stock and the prospective dividends as alleged, and that such representations were fraudulent and actionable.

The court found that the stock was worth the amount paid for it, but we are satisfied that this finding is not supported by the testimony, and that the court excluded important competent evidence bearing upon that issue. Thus the following offer of proof was made at the trial: "Mr. Simpson: If the court please, I want to show that while this defendant was representing this stock as worth a dollar a share, I want to show he sold his individual stock for 55 cents. I think I ought to be permitted to do that. Mr.

Gilluly: At the very time he offered his to her for $1 a share, he had an option on his own for 55 cents. The court: I will sustain the objection. I don't think it necessary to argue it. Mr. Simpson: If the court please—The court: I don't care to have it discussed any longer. Exceptions by plaintiff." Surely it was competent to show that at the very time the respondent made the representations complained of, he was selling or offering for sale the very same stock for 55 per cent of the price paid by the appellant. The testimony was not only competent on the question of values, but went to the credibility of the witness in general. We think the court unduly restricted the appellant in her proofs of value in other respects.

"There is no more important factor in determining the value of particular property than the sales of similar property in the same neighborhood at about the time in question." Lewis, Eminent Domain, § 443.

And we think the sales referred to in the offers of proof were sufficiently close to the sales to the appellant in point of time to render them competent on the question of values, considering the nature and character of the property. *Elmore v. Johnson*, 143 Ill. 513, 32 N. E. 413, 36 Am. St. 401, 21 L. R. A. 366; *Culbertson etc. Provision Co. v. Chicago*, 111 Ill. 651.

"Generally in this and other states . . . evidence of sales of land in the neighborhood is competent on an inquiry as to the value of land, and if the purchase or sale were made by the parties against whom the evidence was offered it might stand as an admission." *Laing v. United R. & Canal Co.*, 54 N. J. L. 576, 25 Atl. 409.

While these cases relate to real property, there is no reason why the same rule should not apply to the stock of a corporation having an established business. In view of the fact that the value of the stock is a material issue in the case, and the court excluded competent evidence bearing upon that issue, this court is unable to render a final judgment.

The judgment of the court below will therefore be re-versed, with directions to take further proof as to the value of the two blocks of stock at the time 'of the appellant's purchase, and to enter a decree in accordance with such values when ascertained.

HADLEY, C. J., FULLERTON, ROOT, and CROW, JJ., concur.