[No. 11944. Department Two. July 27, 1914.]

D. A. DUFFY, *Appellant*, v. J. FRED BLAKE, *Respondent*.[1]

FRAUD—MISREPRESENTATIONS—ACTION FOR DAMAGES — EVIDENCE—QUESTION FOR JURY. Whether the defendant was guilty of fraud in inducing a sale of a one-half interest in a second-hand furniture business is a question for the jury, where the defendant represented the stock as worth $11,413, that the business had made a profit of $4,600 the preceding year, and that a note given by plaintiff as balance of the purchase price could be paid from the profits, when in fact the stock was worth less than $5,000, the profits were less than $2,000, and no profits resulted after the giving of the note, the plaintiff testifying that he was ignorant concerning goods of the character purchased, the cost thereof or the selling price, but that he relied upon an inventory made by the defendant and upon representations made by him and the broker who handled the sale, the latter being an intimate acquaintance of some years, and it appeared that had plaintiff examined the books he would have been unable to determine what the stock was worth or what the profits had been.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 6, 1914, dismissing an action in tort, upon granting a nonsuit, after a trial before a jury. Reversed.

*Carkeek, McDonald & Kapp*, for appellant.

*Eugene A. Childe*, for respondent.

MOUNT, J.—This action was brought by the plaintiff to recover damages from the defendant on account of false representations.

[1] Reported in 141 Pac. 1149.

The false representations alleged in the complaint are to the effect, that the defendant represented to the plaintiff that the Valdez Furniture Company had a stock of merchandise worth $11,413, when it was worth less than $5,000; that the business had made a net profit of $4,600 for the preceding year, when it had made less than $2,000; that a note for $2,000 was given by the plaintiff to the defendant with the agreement that it would be paid out of the profits of the business, when in fact there were no profits from the business after the note was given.

The cause was tried to the court with a jury. At the close of the evidence on behalf of the plaintiff, the trial court granted a nonsuit and dismissed the action. This appeal followed.

It appears from the evidence offered on behalf of the plaintiff that, prior to the first day of July, 1910, the defendant, J. Fred Blake, was operating a second-hand furniture store in the city of Seattle. This business was incorporated and known as the Valdez Furniture Company. The defendant Blake owned substantially all the stock. He desired to sell an interest in the business, and offered for sale one-half of his stock. A Mr. Rutherford acted as broker. The plaintiff at that time was a man 75 years of age. He had known Mr. Rutherford for ten or twelve years. Mr. Rutherford introduced the plaintiff to the defendant, and the plaintiff was informed that the defendant desired to sell one-half of his shares of stock in the Valdez Furniture Company. The plaintiff, for about twenty years preceding July 1st, had been engaged in the bakery business. He had sold his business and desired to enter other business. Previous to engaging in the bakery business, for a number of years he had been engaged in the general merchandise business, consisting of gents' furnishing goods, boots, shoes, etc. At the request of the defendant, the plaintiff visited the furniture store, and was informed by the defendant that the stock of merchandise on hand was of the value of ten or twelve thousand dollars.

The plaintiff inquired as to the profits of the business and the defendant stated that, for the year 1909, the business had made a profit of $4,600. The defendant stated he would sell one-half the stock of the company for $5,000. The plaintiff stated that he would not purchase the stock of the corporation unless an inventory was made of the second-hand goods on hand. An inventory was taken by the defendant and two men in his employ. The plaintiff was there part of the time while the inventory was being taken. He had no experience in the furniture business, did not know the value of second-hand furniture, and so stated to the defendant. While the inventory was being taken, the defendant requested his employees to put the prices up, which was done. As a result, the inventory showed that the stock of goods was worth $11,413.30. The plaintiff thereupon stated that he did not have $5,000, the amount asked by the defendant for one-half the stock of the corporation; that he had only $3,000. Whereupon Mr. Blake told him that the profits of the business would pay the balance of the purchase price, $2,000, within one year, and that Mr. Duffy might give his note for the balance. Accordingly, $3,000 was paid in cash on the 5th day of July, 1910, and a note executed for the sum of $2,000, payable in one year. The plaintiff then went into the store, and soon after learned that articles were being sold for much less than the prices named in the inventory. He complained to Mr. Blake, and was informed that the inventory was about double the value of the goods.

Soon after the note for $2,000 was executed, it was sold by Blake to innocent purchasers. Suit was afterwards brought upon it, and a judgment was had against the plaintiff for the amount of the note, with interest and costs. See *Wells v. Duffy,* 69 Wash. 310, 124 Pac. 907.

The plaintiff testified that he knew nothing about the value of these second-hand goods, and relied upon the statements of Mr. Blake with reference to their value; and also relied upon his statement with reference to the profits the business had

been making. The plaintiff also testified that he saw some books in the office, but did not examine them to find out the condition of the business or the profits which had been made. The evidence shows that the stock of goods on hand at that time was not worth to exceed $6,000; that the profits for the year 1909 were $1,016 instead of $4,600; and that, after the plaintiff purchased the stock and went into the store, there were no profits.

The trial court was of the opinion that, because the plaintiff was an experienced business man, was present at the time the inventory was taken, and knew that the books were at hand which disclosed the condition of the business, he was therefore bound to take notice of the value of the stock of goods, of the condition of the business, and the profits which were shown by the books. We are satisfied that the evidence in this case was sufficient to take the case to the jury. The appellant testified that he was entirely unacquainted with goods of this character; that he knew nothing of the cost of such goods, or the selling price. He had known Mr. Rutherford intimately for a period of ten years. It is true, he had but recently been introduced to Mr. Blake, but he was introduced by Mr. Rutherford and was told that Mr. Blake was a member of the Presbyterian church in good standing; and he testified that, because of his friendship with Mr. Rutherford, who introduced Mr. Blake, and because Mr. Rutherford was secretary of the corporation, he thought he could rely, and did rely, upon the representations made by Mr. Blake, both as to the value of the goods and as to the profits the business had made during the last year. He testified that he did not examine the books, nor ask to examine them. It was not shown that he could have told after an examination of the books what the stock was worth, or what the profits had been. One of the books is in evidence before us, and we are unable to determine these facts from this book. It is probable that a bookkeeper might have been able to do so. In fact, the bookkeeper placed upon the stand did testify as

to the value of the goods as shown by the books, and as to profits which had been made. But it was not shown that Mr. Duffy, even though he was an experienced man, knew anything about bookkeeping, or about books of account. We are satisfied that there was sufficient evidence in this case to take it out of the rule of *caveat emptor*, as was evidently applied by the trial court, and to require the case to be submitted to the jury upon the question of false and fraudulent representations. In *Stewart v. Larkin*, 74 Wash. 681, 134 Pac. 186, we said:

"Appellants contend their judgment is well founded upon the rule announced in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102, and other like cases, where it has been held that the tendency of modern cases is to restrict, rather than to extend, the doctrine of *caveat emptor*, and that the unmistakable drift is toward the doctrine that wrongdoers cannot shield themselves from liability by asking the law to condemn the credulity of their victims and give them an unbridled license to lie and deceive. No better illustrations of this modern tendency can be found than in the decisions of this court for the past few years; but it will be found that, in all of these late cases, there was a false assertion of an existing fact the truth of which was peculiarly within the knowledge of the vendor, or means of knowledge; or the property was at a distance and the opportunity of ascertaining the true facts not readily ascertainable; or the misrepresentation was made for the purpose of inducing the other party not to make an investigation and ascertain the true facts; or the vendor knew that the vendee did not intend to make a personal investigation but relied absolutely on the truth of the facts communicated to him. It was not intended, in any of these cases where the decision has been based upon some one of the above facts, to attempt to depart from the rule here first asserted, and the distinction between these two rules and the facts to which each is applicable is pointed out in *Wooddy v. Benton Water Co.*, *supra*, quoting from 14 Am. & Eng. Ency. Law (2d ed.), 120, 121, where the rule is thus stated:

" 'By the overwhelming weight of authority, ordinary prudence and diligence do not require a person to test the truth

of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself. By the weight of authority, and in reason the rule that a person who is voluntarily blind as to facts concerning which false representations are made cannot complain of the same, applies only where the parties have equal present opportunity and means to ascertain the truth at the time of the transaction, and does not apply merely because it is possible to ascertain the facts. Indeed, it has been held that a person is justified in relying on a representation made to him, in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth.' "

And so it is in this case. The value of this stock of goods was peculiarly within the knowledge of Mr. Blake; the profits for the preceding year were peculiarly within his own knowledge; the cost of second-hand goods was peculiarly within his own knowledge. He knew that Mr. Duffy was unacquainted with the cost of second-hand goods; and he undoubtedly knew that Mr. Duffy would rely upon the inventory made by him and his clerks. Mr. Duffy did not know the cost of second-hand goods. This means of knowledge was not open to him. While it is true that the means of acquiring knowledge of the character of the goods was open to Mr. Duffy, and while the profits of the business, as shown by the books of account, were open to him, in order to acquire this knowledge it was necessary for him to make an investigation of the stock of goods and of the books. He did not attempt to do this; and we think he was not required to do it, but might rely upon the positive statements of Mr. Blake as to the value of the goods and as to the profits which had been theretofore made. We think this is especially so when the inventory was taken by Mr. Blake who knew that Mr. Duffy did not know the value of the goods, and knew that in all probability he would

not inquire further as to the value of the goods, or as to the amount of profits that had been theretofore made. Upon the undisputed testimony of Mr. Duffy and his witnesses, we are satisfied that it was the duty of the court to submit the case to the jury, under the rule above stated.

The judgment is therefore reversed, and a new trial granted.

CROW, C. J., PARKER, FULLERTON, and MORRIS, JJ., concur.