[No. 13071.   Department One.   May 6, 1916.]

William W. Boehme, *Respondent*, v. Broadway Theater Company, Incorporated, *et al.*, *Appellants*.[1]

Corporations—Sale of Stock—Rescission—Fraud—Evidence— Sufficiency. The rescission of a sale of corporate stock of a moving picture concern for fraud is warranted, where the preponderance of the evidence supported the claim of the plaintiff, a young man 24 years of age without business experience, that the defendants, officers and principal stockholders of the company, falsely represented that the company was making money above expenses and had for eight weeks, when in fact it had always lost money, that its lease called for monthly rentals of $150 to $200 a month, when in fact it called for $250 per month, and that plaintiff relied on the representations and was induced thereby to purchase stock.

Same — Sale of Stock — Fraud — Reliance Upon — Matters of Fact. A sale of stock in a corporation may be rescinded for false representations as to its financial condition, the volume of its business and the amount of its income and expenses being matters of fact peculiarly within the knowledge of the officers of the company making the same, even though there was an opportunity to investigate.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 4, 1914, upon findings in favor of the plaintiff, in an action for rescission, tried to the court. Affirmed.

*Wm. Martin* and *Hugh C. Todd,* for appellants.

*Jay C. Allen* and *F. P. Rutherford,* for respondent.

Ellis, J.—Action to rescind a contract of purchase of one-third of the capital stock of a moving picture concern, known as the Broadway Theater Company, Incorporated; to recover $1,400 paid on the purchase price; to procure the cancellation of a note for $350 representing the balance; to recover wages claimed to be due to plaintiff from the corporation; and incidentally for the appointment of a receiver.

[1]Reported in 157 Pac. 218.

The court found that the defendants Faurot and Hubachek, the president and secretary, respectively, of the corporation and owners of practically all of its stock, for the purpose of inducing the plaintiff to make the purchase, falsely and fraudulently represented that the theater company was making money above expenses, had made money for eight consecutive weeks immediately prior to plaintiff's purchase in July, 1914, and had never lost any money during the entire nineteen weeks of its business career, and that all of its obligations were paid except the sum of $1,700; that they also represented that they held a five-year. lease of the theater premises at a monthly rental of $150 for six months of each year and $200 a month for the winter months, whereas the lease called for the sum of $250 for each and every month; that, relying upon these representations and the verbal promise of defendants that he should be given steady employment as moving picture operator at $21.25 a week, plaintiff purchased the stock for $1,750, paid $1,200 down, and gave his two notes, one for $200, payable in ten days, which has been paid, and one for $350, payable October 1, 1914; and that the contract provided that the purchase money should be all applied on the indebtedness of the corporation, but that defendants did not so apply it; that plaintiff paid the first note prior to his discovery of the fraud, and that, upon such discovery, he tendered to defendants a return of the stock and demanded of them a return of the money paid therefor and of the unpaid note.

Upon appropriate conclusions of law, the court decreed a rescission of the contract and the cancellation of the note for $350, entered judgment for plaintiff against all of the defendants for $1,400, with interest from August 1, 1914, and costs, and against the theater company for $221.80 for services rendered by plaintiff, and appointed a receiver for the corporation.   Defendants appeal.

As we view the case, it involves but two questions, both of them questions of fact.   Did the appellants misrepresent the

volume of the business and the financial condition of the theater company; and did respondent purchase the stock in reliance thereon? In short, does the evidence sustain the court's findings?

We have read all of the evidence, but can discuss no more than its salient features within the reasonable limits of an opinion. Appellants Hubachek and Faurot were both men of affairs, though neither of them prior to this venture was experienced in the moving picture business. Respondent was a young man, twenty-four years old, with practically no business experience. The money invested represents about all that was left of an inheritance from his deceased father. His mother, who assisted him in this deal, advised appellants of these facts, and told them that she and the boy must rely upon their statements as to the condition of the business. Both she and the young man testified that appellants made the representations in substance as found by the court, but with much more particularity. Appellants denied that they made any such representations, but on cross-examination one of them admitted that he told respondent that, during the nineteen weeks of their operation, the current running expenses and current receipts for attendance were approximately the same. The other appellant, when asked what representations he had made in regard to the daily receipts and average current expenses, answered, "I said at the time that I thought they were breaking even, or nearly so." True, he also testified that he gave the respondent the actual items, which respondent took down on a piece of paper, and which, if taken down correctly, he testified would have shown that the expenses exceeded the receipts, but respondent denied this incident in toto. One of the agents through whom the sale was negotiated, though at first denying that he heard the appellants represent that the company had been making money, finally admitted that he had made an affidavit that, prior to the completion of the sale, he understood the president of the company to state and represent to respondent and his mother

that "for eight consecutive weeks previous thereto the theater had been making money and was on a paying basis." He was apparently an unwilling witness and attempted to qualify this statement, but admitted that, before signing the affidavit, he had revised it to make it accurately state his recollection of the facts. It is now conceded that, at the time of this transaction, the business was not only not making money but was steadily running behind, and the evidence clearly establishes the fact that never at any time throughout its career was the business on a paying basis. For one or two isolated weeks, the income may have exceeded the expenses, but on the whole the business throughout had been a losing one. The representations, even as admitted by the appellants, clearly lacked basis in fact.

We shall not discuss in detail the evidence touching the representations as to the lease. It must suffice to say that the representation as found was actually made, and though one of the appellants claims that he then advised respondent that this was a mere concession from the terms of the lease, we think that the evidence clearly preponderates in favor of the conclusion that neither of the appellants advised respondent that the lease bound the company to pay $250 a month throughout the term and that neither showed him the lease itself. The agreement to pay respondent $21.25 a week was practically admitted.

As to the appellants' claim that the respondent and his mother made an independent investigation of the affairs of the company, the evidence shows no more than that they visited the theater one night, observed the attendance, and afterwards stated to each other and to appellants that on such an attendance they could not see how the concern could be making money. Both of them admitted that this is true, but testified that appellants told them that the attendance was light because it was Potlach time and because the weather was hot. One of the appellants testified that he showed the books to respondent's mother and offered to permit an exami-

nation.    Respondent and his mother both denied that they ever saw the books, and the evidence is convincing that neither of them ever entered upon any specific investigation of the condition of the company, but that they relied almost entirely upon the statements of appellants and that appellants knew that they were so relying.    Upon the whole, we are clear that the evidence strongly preponderates in favor of the facts as found by the court.

The claim that whatever representations were made by appellants were mere expressions of opinion upon which respondent had no right to rely is untenable.    The financial condition of the company, the volume of its business, the amount of its income and expenses, and what these had been in the past, were all matters peculiarly within the knowledge of the appellants and not easily ascertainable by respondent. We have frequently held that representations as to such matters are representations as to matters of fact, and if false and made with knowledge that they were being relied upon by the other party, constitute actionable fraud.    *Johnson v. Ryan*, 62 Wash. 60, 112 Pac. 1114; *Blum v. Smith*, 66 Wash. 192, 119 Pac. 183.    The following decisions of this court rest upon facts of a kindred nature to those here presented, and amply sustain the decision of the trial court upon the facts here involved: *Daniel v. Glidden*, 38 Wash. 556, 80 Pac. 811; *Gilluly v. Hosford*, 45 Wash. 594, 88 Pac. 1027; *Breese v. Hunt*, 67 Wash. 398, 121 Pac. 853; *Borde v. Kingsley*, 76 Wash. 613, 136 Pac. 1172; *Jacoby v. Hollada*, 78 Wash. 88, 138 Pac. 558; *Duffy v. Blake*, 80 Wash. 643, 141 Pac. 1149; *Bunck v. McAulay*, 84 Wash. 473, 147 Pac. 33; *Gillette v. Anderson*, 85 Wash. 81, 147 Pac. 634; *Randolph v. Togus*, 85 Wash. 332, 148 Pac. 5; *Hayes & Porter v. Wood*, 86 Wash. 254, 150 Pac. 1.    The governing principle as sustained by the trend of modern authority and by all of the more recent decisions of this court is tersely stated in *Christensen v. Koch*, 85 Wash. 472, 148 Pac. 585, as follows:

"Ordinary prudence does not require a person to test the truthfulness of representations made to him by another as of his own knowledge with the intent that they shall be believed and acted upon, even though the party to whom such representations are made may have an opportunity to ascertain the truth for himself."

Upon the record before us, we find no warrant, either in evidence or law, for a reversal of the judgment. It is affirmed.

Morris, C. J., Mount, Fullerton, and Chadwick, JJ., concur.