[No. 17990. Department One. October 18, 1923.]

## COMMUNITY STATE BANK, *Appellant*, v. JAMES DAY, *Respondent*.[1]

FRAUD (4, 22)—FRAUDULENT REPRESENTATIONS—MATTERS OF FACT OR OF OPINION—MISREPRESENTING FINANCIAL CREDIT OF THIRD PERSON —EVIDENCE—SUFFICIENCY. The representation by a bank cashier that a certain company would be a better concern in a year was an expression of opinion only; but the statement that it was a good paying proposition and a good going concern was of existing facts. and actionable, where they were known to be false, and defendant was thereby induced to execute a note to the bank in payment of capital stock in the company, and which the bank immediately applied upon indebtedness of the company to it, having recently taken a mortgage upon all of its property, which was not disclosed to the defendant.

BANKS AND BANKING (14)—WRONGFUL ACTS OF OFFICERS—LIA-BILITY FOR FRAUDULENT REPRESENTATIONS. A bank is liable for false representations of its cashier, made in the conduct of the bank's business, whereby defendant was induced to give his note to the bank for the worthless stock of a corporation, which the bank credited upon the obligation of the concern to the bank.

FRAUD (6, 7)—RELIANCE ON REPRESENTATIONS—DUTY TO INVESTI-GATE. A duty to investigate the financial standing of a corporation is not shown by the fact that it exhibited its books, where there was evidence that only an expert could tell anything from an examination of the books.

[1]Reported in 219 Pac. 43.

FRAUD (18)—EVIDENCE—ADMISSIBILITY. Upon an issue as to the duty to investigate the financial standing of a corporation in which defendant was fraudulently induced to invest, an offer to prove on cross-examination, that defendant had investigated the "affairs" of three other concerns and purchased stock in them is properly excluded when it would throw no light on the case.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered October 30, 1922, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Affirmed.

*Thos. H. Wilson,* for appellant.
*Stephen E. Chaffee,* for respondent.

MITCHELL, J.—This action was brought by the Community State Bank of Mabton to recover on a promissory note of $1,000, dated January 10, 1921, due January 10, 1922, made and delivered to it by the defendant. The answer was that the note had been procured by false representations on the part of the plaintiff, it knowing them to be false when made; that they were made with the intent to deceive; that the defendant believed them and relying thereon executed and delivered the note. Verdict and judgment were for the defendant, from which the plaintiff has appealed.

The note was given for ten shares, at par value of $100 each, of the capital stock of the Mabton Alfalfa Meal Company (hereinafter spoken of as the meal company), which was organized and commenced business about May, 1920. The cashier of the appellant bank became a stockholder and director of the meal company upon its organization, and continued to be such at all times thereafter. Commencing in the latter part of the year 1920, the meal company got into necessitous circumstances, and continued to grow more so until all of its property was sold in May, 1922, upon foreclosure of a mortgage for $5,000, given shortly

before the note here sued upon, the amount realized at the foreclosure sale being insufficient to satisfy the mortgage. During all of the time it was engaged in business, the meal company did all of its banking business with the appellant, and at the meeting of the directors that authorized the giving of the mortgage to the bank, the cashier of the bank, as one of the directors of the meal company, was present and participated in that business.

In its principal aspect, the case is not unusual in that the evidence supporting the allegations of false representations was disputed and denied. Upon all of it, however, we think the case was one for the jury. On behalf of the respondent, it was shown, substantially, that, shortly before the note was given, the manager of the meal company importuned the respondent to buy of the capital stock. Not being satisfied, however, the respondent went to the cashier of the bank to get the facts about the meal company's business. The cashier took him into his private office and talked the matter over with him. The respondent told the cashier that the manager of the meal company had been after him for some time to buy stock, but that he was afraid to do so because "there was so much of this promoted stock and it was nothing but a hot air scheme," "so I come in there to find out the condition of that mill." The cashier told him the meal company was a good paying proposition, that it was a good going concern, and that it would be a better concern another year than it was at that time. The respondent further testified that he believed and relied upon those statements, and in a few days purchased the stock, giving the meal company his note therefor. The note was taken to the bank for negotiation and refused by the cashier, who, as he testified, told the manager of the meal company his refusal of it was because the

bank "didn't like to have their endorsement on any more notes, they owed us $5,000 then." Thereupon the manager of the meal company and the respondent went to the bank and, instead of the note already given the respondent, made and delivered to the bank the note in suit, which, by the cashier, was immediately entered and endorsed by him as a credit on the meal company's $5,000 note not yet due by a considerable time, and to that extent reduced the sum for which the mortgage was foreclosed. The cashier testified that the credit was so made at the request of the respondent, who denied that he made any such request. The testimony shows that there were overdrafts in the bank against the meal company, and that it owed others than the bank in substantial amounts, and that it was not paying its bills in the ordinary course of business, within the knowledge of the cashier of the bank. While the respondent was advised of some of the liabilities of the meal company by its manager, it was not denied at the trial that its manager, the cashier of the bank, or anyone else, did not advise the respondent that, a few days prior to the date of the note in suit, the meal company had given a mortgage on all of its property to the bank. The cashier of the bank positively denied the making of the representations concerning the meal company's condition charged upon him by the respondent, thus creating a dispute for the jury to decide. The representation attributed to the cashier that the meal company would be a better concern another year may be classed as the expression of an opinion only; but not so, with the statements that it was a good paying proposition and a good going concern, which were statements of existing facts.

There is no merit in appellant's contention that it is not responsible for the misrepresentations of its cashier, assuming any were made. The note in suit

was made to the bank, the plaintiff in this action. Its cashier induced the giving of it, as decided by the verdict. The amount of the note was at once passed to the bank, through its cashier, to the credit of the meal company's note upon that company's note to the bank not yet due. The cashier in the transaction was engaged in the business of the bank, and his knowledge was the bank's knowledge. *Hitt Fireworks Co. v. Scandinavian American Bank,* 114 Wash. 167, 195 Pac. 13, 196 Pac. 629; *First Nat. Bank of New Bremen v. Burns,* 88 Ohio St. 434, 103 N. E. 93, 49 L. R. A. (N. S.) 764; 7 C. J., Banks and Banking, § 134, p. 530.

In the course of his considering the purchase of the stock, the respondent was shown somewhat of the books of the company by the manager, and it is insisted by the appellant that he cannot justly complain if he failed to pursue the means thus made available to him to the extent of ascertaining the full and true conditions of the affairs of the meal company. In this regard, the respondent was asked on cross-examination "You had access to the books all the time, didn't you?", to which he answered, "Well, I didn't know nothing about them. It would have taken an expert to know anything about them." This, together with other facts and circumstances, was sufficient to justify the jury in believing that the respondent could not fully acquaint himself with conditions by this means, and that the manager who showed him the books knew it. Upon such exhibition of the books he was shown some of the indebtedness, but not the principal one of $5,000 covering all of the property. He did go to the cashier of the bank for information that he would rely on, and received that which he satisfied the jury was false and misleading. As lately as the case of *Boehme v. Broadway Theater Co.,* 91 Wash. 104, 157 Pac. 218, we said:

"The financial condition of the company, the volume of its business, the amount of its income and expenses, and what these had been in the past, were all matters peculiarly within the knowledge of the appellants and not easily ascertainable by respondent."

Again in the same case we said:

"The governing principle as sustained by the trend of modern authority and by all of the more recent decisions of this court is tersely stated in *Christiansen v. Koch,* 85 Wash. 472, 148 Pac. 585, as follows:

" 'Ordinary prudence does not require a person to test the truthfulness of representations made to him by another as of his own knowledge with the intent that they shall be believed and acted upon, even though the party to whom such representations are made may have an opportunity to ascertain the truth for himself.' "

To the same effect see *Gilluly v. Hosford,* 45 Wash. 594, 88 Pac. 1027.

In 26 C. J. 1152, on the subject of fraud, it is said:

"The right to rely upon representations, is generally conceded where the hearer lacks equal facilities for ascertaining the truth, as where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain,"

Instances of which, the author says, are:

". . . where because of the hearer's ignorance and inexperience it would be necessary for him to employ a third person to make an examination in order to learn the truth, where the employment of an expert would be required, etc."

Objections are made by the appellant to certain instructions given, and the refusal of the court to give certain requested instructions. What has been said as to the rules of law governing this kind of case is sufficient answer to these assignments. The instructions given were proper and fully covered the case on behalf of both sides.

On cross-examination of the respondent, he admitted he had purchased stock in other corporations prior to his purchase of this stock. Upon sustaining objections to further cross-examination upon that point, the appellant offered to prove that the respondent "investigated the affairs" of the other concerns, purchased stock in them and was a director of one of them. The refusal by the court of this offer is assigned as error. Under the evidence in this case, had the offer been made to prove that the respondent had purchased stock in the three concerns, relying on his own examination of their books and accounts, it would have been pertinent and proper cross-examination, but the offer as made, even if answered in the affirmative, would throw no light on this case and there was no error in the ruling complained of.

Some considerable contention is made of an attempt, partly successful, on the part of the respondent and others some months after the note in suit was given, and at a time when the respondent had become fully aware of the existing insolvency of the meal company, to purchase meal company stock at fifty per cent and less of its par value. It was clearly shown, however, that efforts in that respect were for the avowed purpose of saving something if possible out of the impending wreck and was in no way inconsistent with his charge of actionable fraud against the appellant in procuring the note upon which this suit rests.

Upon the whole record, we think the trial was a fair one, and that the motion for a new trial was properly denied. Judgment affirmed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and BRIDGES, JJ., concur.