[No. 25742. Department Two. January 9, 1936.]

DEPOSITORS BOND COMPANY, *Appellant*, v. F. A. CHRISTENSEN *et al.*, *Respondents.*

GEORGE W. WOLF, *Respondent*, v. DEPOSITORS BOND COMPANY, *Appellant.*[1]

[1]Reported in 53 P. (2d) 312.

*C. E. Hughes* and *Lowden Sammis,* for appellant.
   *Arthur E. Griffin* and *Kermit M. Hammer,* for respondents and cross-appellants.

BEALS, J.—Prior to the year 1925, Robert A. Symmonds, who had studied business and financial subjects, became known as a lecturer on these matters, and during 1925 and succeeding years obtained a large following. Depositors Bond Company, a corporation, and a party to this litigation, was organized during the year mentioned, with Mr. Symmonds as its president.

Two years later, another corporation, known as Mutual Benefit Club, was organized, all of its stock, with the exception of qualifying shares issued to its directors, being owned by the older corporation. The club functioned as an educational and cooperative institution, its members frequently having the benefit of lectures, which were copyrighted by Mr. Symmonds. From one small unit in 1927, the club membership rapidly increased, having during the year 1929 five thousand members and a gross annual income of eighty thousand dollars from tuition and sixteen thousand dollars from other sources. By January, 1931, the membership had reached its maximum of sixty-eight hundred members, each paying tuition of one dollar a month and an initiation fee which was first fixed at five dollars and later increased to fifteen dollars.

During the month of May, 1930, Depositors Bond Company was, by unanimous vote of its stockholders, authorized to increase its capital stock of one hundred thousand dollars by the issuance of nine hundred thousand shares of class A preferred stock, having no par value. The articles of incorporation were further amended February 11, 1931, by the reduction of this class A preferred stock to ninety thousand shares, and by providing for the issuance of two million shares of class B preferred stock, having no par value. During the month of April, 1932, the capital stock of the corporation was reduced. Stock of classes A and B was,

by its terms, redeemable, and December 8, 1931, the trustees discontinued the redemption of this stock, notice of this action being at once mailed to the stockholders.

During the month of May, 1932, twenty-two stockholders brought suit against Depositors Bond Company, seeking to restrain the payment of dividends and asking for a decree adjudging that the corporate assets were a trust fund for the sole benefit of the owners of classes A and B stock. This suit was settled approximately twelve months after it was instituted.

Shortly after the termination of this litigation, one F. A. Christensen, who was not a stockholder, corresponded with certain of the stockholders, the corporation contending that he sought to instigate further litigation on the part of certain stockholders against the corporation. January 18, 1934, the corporation filed suit against Mr. Christensen and others, asking for an injunction restraining the defendants from instigating and inciting ill-founded and vexatious actions against the corporation.

During the month of April, 1934, George W. Wolf, individually and as assignee of forty-two other stockholders, sued Depositors Bond Company, asking for a decree rescinding their stock purchases and awarding them judgment for money paid for the stock in the sum of $22,861.54.

The two actions were consolidated for trial, and, after a hearing lasting five weeks, the superior court, during February, 1935, entered two decrees, one dismissing the corporation's suit against Mr. Christensen, the other granting judgment of rescission in Mr. Wolf's action and awarding judgment against the corporation for something over twenty thousand dollars, together with interest. Depositors Bond Company has appealed from the decree dismissing its action against

Mr. Christensen and others, and also from the decree awarding judgment against it and in favor of Mr. Wolf. Mr. Wolf has cross-appealed, contending that the trial court erred in failing to allow interest from the respective dates the stock was purchased instead of merely from the date of tender, and also upon the refusal of the trial court to grant judgment of rescission in favor of seven of the stockholders. He also contends that the trial court erred in refusing to allow him certain costs.

For convenience, we shall refer to Depositors Bond Company as appellant, to F. A. Christensen and his group as Christensen, and to George W. Wolf and his assignors as respondents.

Appellant contends that the trial court erred in overruling its demurrer to the complaint in respondents' action, in failing to sustain its challenge to the sufficiency of the evidence in that suit, and in denying its motion to dismiss. Error is also assigned upon the finding of the trial court to the effect that respondents had been induced by misrepresentation to purchase stock, upon the finding that appellant's system of bookkeeping was complicated, and upon the refusal of the trial court to find that respondent had been guilty of laches. In connection with respondents' action, appellant also complains of the entry of judgment against it and in favor of respondents, contending, in any event, that the award is too large. In connection with its suit against Christensen, appellant contends that the trial court erred in dismissing its action. We have already referred to the assignments urged by respondents on their cross-appeal.

In the first place, appellant contends that respondents' complaint fails to state facts sufficient to constitute a cause of action, in that it is based on fraud, alleges that the stock was purchased during the

years 1930 and 1931, and that the falsity of the representations made was not discovered until on or about May 23, 1933. As respondents' complaint was not filed until April 25, 1934, appellant contends that the action was not commenced within the time limited by law, arguing that the statement that the falsity of representations was not discovered until 1933 is insufficient to excuse the delay in bringing the action, as to some of the causes of action at least, until more than three years after the stock was purchased.

In this connection, respondents rely upon the case of *Stearns v. Hochbrunn,* 24 Wash. 206, 64 Pac. 165, which supports their contention. In any event, respondents in their reply affirmatively pleaded with greater particularity than in the complaint the facts which they contended excused the delay in the institution of the action. It does not appear that appellant moved against the affirmative matter contained in respondents' reply, and, in accord with well-established rules of practice, under the circumstances disclosed by the record herein, it cannot be held that this court must now reverse the judgment appealed from and direct that appellant's demurrer to respondents' complaint be sustained. In any event, the proof amply sustained respondents' position, showing beyond question that knowledge of the circumstances was not brought home to respondents until well within the period of three years prior to the institution of the action. This assignment of error is without merit.

The remainder of appellant's contentions may properly be discussed together. Respondents tendered their stock to appellant December 5, 1933—seven months after they allege that they discovered the facts concerning the fraud which had been perpetrated upon them. As above stated, the action was instituted by filing the complaint April 25, 1934. Appellant

earnestly contends that respondents were guilty of such laches in deciding to rescind and instituting the action that they should be barred in equity from prosecuting the same.

It is, of course, true that oftentimes delay in electing to rescind amounts to a waiver of rights which might have been exercised if promptly asserted. *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161. The remedy of rescission is not one of absolute right, but, like specific performance, its exercise rests largely in the sound discretion of the court. Many cases are cited by appellant, in which this and other courts held that actions were barred by undue delay on the part of the litigant seeking to establish some equitable right.

Of course, each rescission case depends upon its own facts. An action to rescind the sale of a farm, or of a house and lot, or of an automobile, all of which the purchaser sees and soon thoroughly understands, unless the defects happen to be latent, should be brought with less delay than an action to rescind the purchase of an article with the true nature of which the purchaser more slowly becomes acquainted.

In the case at bar, the corporation was regularly organized, and the issuance of stock in classes A and B was authorized by the office of the secretary of state. It can readily be understood that purchasers of these stocks might not for some time become acquainted with the true condition of appellant. The trial court expressly found that appellant's system of accounting was complicated, and although appellant assails this finding, examination of the record convinces us that the trial court was correct in its conclusion. Assuming that the bookkeeping of such a corporation as appellant would not be readily understandable by one not familiar with figures, we are of the opinion that

the trial court did not overestimate the situation in its finding upon this phase of the evidence.

Taking into consideration the facts which we have referred to and others disclosed by the record, we are of the opinion that the trial court correctly ruled that respondents were not barred by laches from maintaining the action.

■ Appellant next contends that respondents are estopped to maintain their action, arguing that the stock certificates issued to respondents bear a specific statement that the operation of the much vaunted redemption feature thereof might be suspended, in the discretion of the board of trustees. Appellant also argues that, because respondents attended stockholders meetings and voted their stock, thus participating in the management of the corporation, they could not thereafter maintain an action for rescission. We are not impressed by appellant's argument upon this phase of the case, and hold that no estoppel operates against respondents.

■ The principal question to be determined is whether or not the record supports the findings of the trial court, which unquestionably support the conclusions of law and the decree entered in accordance therewith. It clearly appears that Mr. Symmonds, during the year 1925 and the years following, up to the crash of the stock market, convinced many people that he was putting into operation a sound investment system whereby those who intrusted their money to the two corporations above referred to would realize substantial profit without appreciable risk of loss. Mr. Symmonds and those of his associates who participated with him in the management of the business and in giving the lectures above referred to and in issuing the bulletins which came in considerable numbers from the headquarters of the business, undoubtedly con-

vinced many people, including respondents, that the system of investment and finance which they advocated was sound, that the corporations were, and would continue to be, solvent and worthy of support, and that their stock was and would continue to be of value.

The trial was long and the evidence is voluminous, approximately 110 witnesses testified, the statement of facts covers over 2,800 pages and includes 256 exhibits. A detailed analysis of the evidence would extend this opinion to unreasonable length. Appellant discusses at length respondents' complaint and the evidence introduced thereunder, and vigorously attacks the findings of the trial court in respondents' favor. Appellant also cites many authorities supporting abstract principles of law, which appellant contends apply to the situation here presented.

Much evidence was introduced by respondents to the effect that they bought the stock upon statements contained in lectures, written bulletins, or oral promises, to the effect that the stock would be redeemable at appellant's office any business day, at its liquidating value. Much money was paid, in reliance upon these promises, in advance of the issuance of the certificates. Respondents also introduced testimony to the effect that officers of appellant, when asked about the notice printed on the certificates to the effect that the trustees could suspend the stockholders' option to demand redemption, made statements to the effect that the stock was nevertheless redeemable.

Findings V to VIII, inclusive, read as follows:

"V. That the defendant, Depositors Bond Company, a corporation, through its authorized agents represented to plaintiff and to plaintiff's assignors and other purchasers of Class A and B stock that at the time of issue of said stock on or about the 31 day of May, 1930, that the defendant had a net worth in excess of $100,000; that it was a prosperous concern

making large profits and on a dividend paying basis; that every dollar of the funds received from the sale of Class A and B was and/or would be used for the purchase of stock on the New York Stock Exchange; that said stocks were purchased and held outright by the defendant; that no part of the proceeds from the sale of Class A and B stock was or would be used for expenses and for any general corporation purposes; that the selling and redemption price of Class A and B stock was calculated by adding the market value of the stock held in this portfolio to the cash on hand which had been derived from the sale of Class A and B stock and dividing this sum by the number of shares outstanding.

"VI. That all of said representations were of material facts and were relied on by plaintiff and plaintiff's assignors and were believed by them to be true, and believing and relying thereon were induced to buy the Class A and B stocks hereinafter mentioned, and were made orally in writing.

"VII. That Depositors Bond Company did not have a net worth of $100,000 on or about the time it issued Class A stock and commenced to offer the same for sale or to-wit: on or about May 31, 1930; that it was not on a dividend paying basis; but was then in debt in an amount exceeding its assets; that the funds derived and received from the sale of Class A and B stock were not invested dollar for dollar in listed stocks but were by defendant mingled with the general funds of the corporation and used by defendant without the knowledge of plaintiff or his assignors to the extent of at least $200,000 for paying off of prior obligations of the company or for general corporate purposes; and that the selling and redemption prices were not figured according to the formula represented; that said misrepresentations were of material matters upon which plaintiff and plaintiff's assignors relied to their damage.

"VIII. That the defendant had a complicated bookkeeping system and that plaintiff and plaintiff's assignors were not negligent in failing to discover the fraud; that when sufficient facts came to their attention to put plaintiff and his assignors on inquiry they

acted with reasonable diligence to discover the fraud and to assert their claims and in the interim did nothing that can be held to bar their right of recovery on the ground of laches.''

While the record discloses considerable conflict in the testimony, the findings are amply supported. The burden of proof rested upon respondents, who assumed the same, and we agree with that portion of the memorandum opinion filed by the trial court in which it is stated that the evidence that material representations were made by appellant's officers and that the same were false and untrue is clear, cogent and convincing. The representations were in many instances made as to existing facts, and were not in accord with the true situation.

In the following cases, representations of a somewhat similar nature were considered, the cases supporting the decree now before us for review. *Krisch v. Inter-State Fisheries Co.*, 39 Wash. 381, 81 Pac. 855; *Fischer v. Hillman*, 68 Wash. 222, 122 Pac. 1016, 39 L. R. A. (N. S.) 1140; *Johns v. Coffee*, 74 Wash. 189, 133 Pac. 4; *Boehme v. Broadway Theater Co.*, 91 Wash. 104, 157 Pac. 218; *Gates v. Gregory*, 91 Wash. 151, 157 Pac. 470; *Hoptowit v. Brown*, 115 Wash. 661, 198 Pac. 370; *Bowe v. Provident Loan Corp.*, 120 Wash. 574, 208 Pac. 22; *Community State Bank v. Day*, 126 Wash. 687, 219 Pac. 43; *Hahn v. Brickell*, 131 Wash. 212, 229 Pac. 739; *Blewett v. Ward*, 159 Wash. 651, 294 Pac. 577; *Goodin v. Palace Store Co.*, 164 Wash. 625, 4 P. (2d) 493.

It is evident that Mr. Symmonds and his associates established, and for a long while maintained, a great influence over the persons who looked up to him and them as financial wizards who would lead them through the maze of countless advertised financial investments to large and profitable returns, based, at the same time,

upon secure investment. We agree with that portion of the trial court's memorandum opinion in which it is stated that there was no criminal intent on the part of appellant's officers, and that they did not intend to defraud those who trusted them. As stated by the court:

"Their fault was that they were too careless with their facts. Whether through ignorance or stupidity, the effect is the same as through design. They made misrepresentations of material matters upon which plaintiff's assignors relied to their damage. As a matter of law, this constitutes actionable fraud."

Appellant argues that, under the evidence introduced by respondents, it should be held that their stock was a cooperative and speculative investment, and that, if any recovery whatever is to be allowed in respondents' favor, it should be limited to some redemption or liquidation value of the stock. We cannot agree with this theory. Under the evidence, the trial court correctly held that respondents were entitled to rescind the contract which they had made to purchase the stock. The evidence justifying the granting of this relief, the trial court properly entered a decree in accordance with the facts and the law.

Appellant contends that the result of this decree will be to injure other stockholders whose rights are in equity equal to those of respondents. This, of course, may be an unfortunate incident, but the possibility that such a result may follow affords no ground for refusing to respondents their legal rights.

Further discussion of the voluminous record before us would be unprofitable. We are clearly of the opinion that the findings of the trial court are amply supported by the evidence, and that the court properly decreed a rescission in respondents' favor.

As to appellant's appeal from the decree dismiss-

ing its action against Christensen, what we have said in regard to the other suit practically disposes of the appeal last referred to. On the record, the court would not have been justified in awarding appellant an injunction restraining the bringing of the action or actions which it alleged were threatened.

Respondents by cross-appeal contend, first, that the trial court erred in denying any recovery to seven of Mr. Wolf's assignors. We have carefully examined the record, in so far as the same bears upon these claims, and are satisfied that the trial court correctly ruled that those persons were not entitled to rescind their purchases of stock.

The court also correctly held that those who were allowed to exercise the right of rescission should be allowed interest only from the date their stock was tendered to appellant.

As to respondents' contention that the trial court improperly struck from the cost bill certain items which were sought to be charged, it cannot be held that the action of the trial court was erroneous.

Both decrees are affirmed. Respondents in the Christensen case will be allowed such costs in this court as are properly taxable in their favor. In the Wolf case, both parties having appealed and the decree being affirmed as to both parties, no costs in this court will be allowed.

STEINERT, BLAKE, HOLCOMB, and MAIN, JJ., concur.