[No. 27460. Department One. August 14, 1939.]

WILLIAM E. WEIR, *Appellant,* v. SCHOOL DISTRICT No. 201, KLICKITAT COUNTY, *et al., Respondents.*[1]

[1]Reported in 93 P. (2d) 308.

*Snively & Bounds* and *Owen Clarke,* for appellant.

*Edgar H. Canfield* and *Ralph S. Barber,* for respondents.

STEINERT, J.—Plaintiff brought suit to recover the amount of a year's salary stipulated in a contract under which he had been employed as principal of a school district. Defendant resisted the action on the ground that the contract had been procured by plaintiff through fraud. Trial of the issues by the court without a jury resulted in a written decision in favor of defendants and a judgment dismissing the action. Plaintiff has appealed.

On June 4, 1937, appellant, William E. Weir, accompanied by his wife, went to Glenwood, Washington, for the purpose of applying for the position of principal of public schools of the respondent school district. There they became acquainted with the three respondent school directors and during the course of the day had several conversations with them relative to the position. Mr. Weir's qualifications appeared to be fully satisfactory to the directors. The matter of salary was, concededly, an important topic in the discussion.

According to Mr. Weir's testimony regarding the negotiations on that occasion, it was then and there orally agreed that the directors would employ him for the succeeding school year beginning August 30th at an aggregate salary of eighteen hundred dollars, which amount the directors themselves proposed. No contract forms being then available, Weir was advised that the necessary papers would be mailed to him at an early date for signature. Mrs. Weir testified to the same effect.

According to the testimony of the directors, they were at that time doubtful whether the district was financially able to pay as much as eighteen hundred

dollars, but were willing to authorize the execution of a contract providing for that amount of compensation for Weir's services if the school budget, which had not yet been approved, should be the same as that for the preceding year. They further testified that, at the conference, Weir agreed to call upon Mrs. Sue Morehead, county superintendent of schools, at Goldendale, which was about thirty-five miles distant, and ascertain from her the financial condition of the school district and the status of its budget for the ensuing year, and report the results to them. Mr. and Mrs. Weir both denied that any such agreement, or any conversation evidencing such understanding, was had, and it does not appear from the record before us that Mr. Weir ever went to Goldendale for that purpose.

On June 19th, no contract forms having been received by Weir, he made a second trip to Glenwood. According to his testimony regarding the events of that occasion, he spent the greater part of the day interviewing the directors with reference to the contract. In the evening, he met two of them at the schoolhouse, at which time the contract was signed by him and the two directors, in the presence of the county superintendent and one Harold Henry, without any objection whatever to any of its terms, including the salary provision of eighteen hundred dollars. Later in the same evening, the third director signed the contract in the presence of Henry and, likewise, without any objection. Henry corroborated the account thus given by Weir.

The evidence of respondents regarding the circumstances incident to the execution of the contract was of a different hue. The two directors testified that, at the meeting on the evening of June 19th, and prior to the execution of the contract, Weir told them that he had consulted the county superintendent and was advised by her that the school budget had been approved and

that the district would be able to pay him eighteen hundred dollars. They further testified that they had signed the contract relying wholly upon Weir's representations regarding his conference with the county superintendent, and that no one other than Weir and themselves was present when the contract was signed. One of the directors admitted, however, that, just as they finished signing the contract, the county superintendent came into the room and then told them that they could not pay eighteen hundred dollars. The third director, who was not present at the meeting but who signed the contract later in the evening, testified that, although at the time of affixing his signature thereto he expressed the view that the district did not have sufficient funds to pay the stipulated salary, he had nevertheless executed the agreement, relying upon the same representations made by Weir.

Mrs. Morehead, the county superintendent, was called by respondents as a witness at the trial, and her testimony was as follows: At no time prior to June 19th had Weir discussed with her the financial condition of the school district. On that day, however, while attending a picnic in Glenwood, she had met Weir, who informed her at that time that the school district was about to hire him as principal at a salary of eighteen hundred dollars. Knowing the financial condition of the district, she advised him that it would be impossible to pay that amount. Weir then volunteered to get the board of directors together that evening at a stated hour, in order that she and all parties immediately concerned might discuss the entire matter. At the appointed time, she attended the meeting, but upon her arrival the contract had already been signed. She thereupon again informed Weir that there would not be sufficient money to pay him the stipulated amount. Moreover, she had repeatedly told the directors that

they would not have enough funds in the coming year to pay a principal so large a salary. Mrs. Morehead's testimony was corroborated, in part, by her husband, who was also present at the picnic.

Upon rebuttal, Weir denied the misrepresentations attributed to him, and his testimony was corroborated by that previously given by the witness Henry. Weir also denied that he had agreed to arrange a meeting at which Mrs. Morehead was to be present.

From this point, the evidence is not in conflict. About July 23rd, Weir moved to Glenwood and during the next six weeks occupied himself in preparing for the opening of school. In the meantime, other teachers had been employed as assistants to him. School opened on August 30th, and Weir promptly began his work as principal. At about that time, the directors received a copy of the final budget, from which it appeared that they could not pay Weir eighteen hundred dollars. Accordingly, on September 7, they asked Weir to enter into a modification agreement providing for a reduced compensation of thirteen hundred fifty dollars for the year. Weir declined to do so. After several unsatisfactory conferences, protracted over a period of about ten days, the board of directors on September 17th served written notice on Weir terminating his services on September 20th.

Weir thereafter endeavored to obtain a teaching position elsewhere, but, owing to the lateness of the season, was unable to secure one.

In the record, there appear two forms of school district budgets which respondents introduced as exhibits. These forms contain instructions for their preparation. The general procedure prescribed in the instructions is as follows: Prior to April 1st of each year, the county superintendent should furnish the local school board with preliminary estimates of the various re-

ceipts of the school district and information for the following year. The school board should then set up a tentative budget, to be thoroughly discussed with the county superintendent. After a public hearing has been had, a preliminary budget should be transmitted to the county superintendent by April 25th, and a preliminary review made by the county reviewing committee before May 1st, and a tentative total set. Early in July, the county superintendent should send to the school board three copies of the regular budget blank, showing definite estimates of receipts and other necessary information. Two copies of the final budget should be filed with the county superintendent and one with the clerk of the board not later than August 1st. During August, the budget should receive a final review by the county reviewing committee. Four copies of the budget, if then approved, should be filled out, of which one is to be filed with the clerk of the district, one with the county auditor, and two with the county superintendent, who is required to forward one of them to the superintendent of public instruction.

Appellant advances four contentions upon his appeal.

The first is that he did not make the representations attributed to him. It is apparent, however, that the situation upon which this contention is founded presented merely an issue of fact whereon the trial court was required to weigh the evidence and adjudge the credibility of the witnesses. The court having found against appellant on conflicting evidence from which different conclusions reasonably might have been drawn, we are not permitted nor inclined to disturb the finding.

Appellant further contends that, even if it be conceded that such representations were made by him, they could not be held to be fraudulent, because they

were in fact true. There is some basis for this contention, because, according to the discussion in the briefs, supported to some extent by the record, the inadequacy of the budget as finally determined was, in part, attributable to the fact that the patrons of the school district were demanding that five teachers be employed for the ensuing term instead of four, as had been the case in the preceding year. That was a factor which necessarily would affect the financial situation according to whether or not the board should ultimately accede to public demands. However, the evidence upon that issue, as contained in the narrative statement of facts, is too barren of detail to enable us to draw therefrom any satisfactory conclusion. We, therefore, pass that question.

Appellant's next contention is that the alleged misrepresentations were immaterial, in that they necessarily related to future or contingent events, and were, therefore, merely expressions of opinion. We do not agree with appellant. The representations complained of related to positive statements of fact, upon which the directors claim to have relied when they signed the contract. Those statements, as found by the court, were that appellant had interviewed the county superintendent, and that she had told him that the budget was sufficient to pay him a salary of eighteen hundred dollars. If such statements were made, they concerned facts which it is claimed induced the execution of the contract.

Appellant's final contention is that respondents are estopped from claiming reliance on the alleged misrepresentations. We believe that this contention is well founded.

We are aware that the tendency of the modern decisions is to restrict rather than to extend the rule requiring diligence on the part of the injured party and

similar rules such as *caveat emptor.* 26 C. J. 1144, § 59. This court has frequently noted this trend of decision and has aligned itself with that policy. *Wooddy v. Benton Water Co.,* 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102; *O'Daniel v. Streeby,* 77 Wash. 414, 137 Pac. 1025, L. R. A. 1915F, 634; *Duffy v. Blake,* 80 Wash. 643, 141 Pac. 1149; *Bliss v. Clebanck,* 136 Wash. 32, 238 Pac. 979.

But in these later cases, it is to be noted that there was a false assertion of an existing fact, usually with reference to property, the truth of which fact was peculiarly within the knowledge or means of knowledge of the declarant; or the property was at a distance and the opportunity of ascertaining the true fact was not readily at hand; or the misrepresentation was made for the purpose of preventing an investigation and ascertainment of the true fact; or the declarant knew that the other party did not intend to make a personal investigation, but relied solely on the truth of the fact communicated by the declarant. *Stewart v. Larkin,* 74 Wash. 681, 134 Pac. 186, L. R. A. 1916B, 1069.

The case before us does not fit into that mold. The school directors were, themselves, the persons who tentatively were to determine and express the needs and abilities of the school district; they were fully advised and were presumed to know the procedure by which they could determine the exact extent of their prospective obligations; they knew that the amount of money to be used for teachers' salaries would be vitally affected by the number of teachers to be employed; they, of course, were aware that the very keystone of the educational arch was the principal of schools, and that it would require a certain amount of money to procure the services of one who was properly qualified for the place; the directors held positions of trust, which, if accepted by them, demanded a reasonable

devotion to the discharge of the duties thereto annexed; by their own testimony, they knew that the matter of salaries depended upon the condition of the budget, and that the approval of the budget in its finality lay with the county superintendent and the reviewing board; and they were told repeatedly by the county superintendent that they would not have enough money to pay Weir so large a salary.

Under such circumstances, the directors were not justified in relying, if they did rely, upon the alleged statements of Weir, when they themselves had more intimate knowledge and direct authoritative information as to the true condition of the budget and the consequent extent of their financial ability.

Another reason why respondents should be estopped from asserting reliance upon the statements of appellant is that, assuming that they had been misled, they failed to take appropriate action after the contract had been executed and at a time when they knew that the district would be embarrassed by its performance.

One who seeks to avoid a contract, which he has been induced to enter into by fraudulent representations of another touching the subject matter of the contract, must act with reasonable promptness on discovering the fraud, or the right to rescission will be waived. *Blake v. Merritt,* 101 Wash. 56, 171 Pac. 1013; *Kellner v. Rowe,* 137 Wash. 418, 242 Pac. 353; *Stubbe v. Stangler,* 157 Wash. 283, 288 Pac. 916; *Depositors Bond Co. v. Christensen,* 185 Wash. 161, 53 P. (2d) 312.

Hardly had the contract been signed when Mrs. Morehead, the superintendent, appeared at the meeting and announced that the board was unable to pay the amount specified. Thus the directors were advised that any representation to the contrary by Weir was false. Yet they did nothing to repudiate the con-

tract. Instead, they permitted appellant for over two months to busy himself in preparation for the school term, and, finally, to enter upon his duties when school opened on August 30th.

Had the directors acted with reasonable promptness, appellant might have secured another position and thus obviated loss to himself and embarrassment to the school district. When the board ultimately dismissed him on September 17th, it was too late for appellant to secure another appointment. Since the directors had the opportunity and were under the duty to speak promptly, their failure to do so must cast upon the school district the burden of the loss entailed.

The judgment is reversed.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.

